**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Oswald CAMPBELL,**
**Defendant-Appellant.**

No. 84–1182.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 1985.

Decided Oct. 18, 1985.

Kevin McMungal, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Farella, Braun & Martel, Daniel H. Bookin, San Francisco, Cal., for defendant-appellant.

Before DUNIWAY, TANG, and FLETCHER, Circuit Judges.

DUNIWAY, Circuit Judge:

Campbell was convicted of unlawful possession of stolen mail, 18 U.S.C. § 1708, receipt of government property with intent to convert it, knowing it has been stolen, 18 U.S.C. § 641, and conspiracy, 18 U.S.C. § 371, arising out of the sale of stolen welfare checks to undercover agents. He appeals and we affirm.

### I. *Facts.*

On April 5, 1983, Harold Spencer phoned undercover agent Roland Soliz to arrange to sell to Soliz $21,000 worth of United States Treasury checks stolen on April 1 from a United States Postal Service Jeep. The following day, Spencer, Charles Hill, Travis Robinson and Campbell rode together in a car from Oakland to San Francisco. All four were black adults between 20 and 40 years old. They parked the car across the street from San Francisco's Civic Center Plaza, the meeting place agreed upon by Spencer and Soliz. Spencer crossed the street, spoke to Soliz, and gave a signal toward three other men who were standing near the car. Hill then took from the car a bag containing stolen checks and brought it to Soliz. Campbell and Robinson stayed near the auto, conferred, and looked in the direction of the transaction. After examining the checks, Soliz and other officers arrested Spencer and Hill. Thereupon Campbell and Robinson began to walk

away rapidly in opposite directions. They were also arrested.

While under arrest, Campbell volunteered, "I just came along for the ride." He waived his *Miranda* rights. Although he first denied ever touching the stolen checks, when he was told that his fingerprints would be on them if he had touched them, he said, "Well, I might have fingered the checks." He said that he thought the checks might be connected to a postal break-in and that someone in the front seat of the car had told him that "We're going to the city to get $8,500." Campbell's fingerprints were later found on seven pieces of mail stolen on April 1, including U.S. Treasury check envelopes and one mailing insert seized at the April 6 arrest, and on Alameda County welfare check envelopes, also stolen on April 1, discovered on April 16 in an Oakland mailbox. Campbell was not charged with participating in the April 1 theft.

At trial, Campbell offered to stipulate that the checks were stolen from the mail. Additionally, after the United States had finished its opening statement, Campbell offered to stipulate that he knew that the checks had been stolen. The government refused these offers to stipulate.

Over objection, the trial judge allowed the government to present eyewitness testimony regarding the April 1 theft. Lou and Bessie Abram testified that they saw a car pull up near a United States mail jeep. Four black males "around 30" years old were in the car. Two of the men left the car, broke into the jeep, and returned to their car carrying mail. Mr. Abram had previously identified only the two males who broke into the jeep, Spencer and Hill. Campbell was never identified as a participant in the April 1 theft.

## II. Admission of Testimony about the April 1 Theft.

Campbell argues that the district court improperly admitted the testimony about the April 1 theft. He argues that this testimony was unfairly prejudicial, irrelevant to the charges in this case, and did not meet the standards of Fed.R.Evid. 404(b) for admission as evidence of "other crimes, wrongs or acts." Campbell maintains that the prosecution introduced this evidence to suggest that Campbell was a man of criminal character who had participated in a more serious crime than those with which he was charged. Holding that the challenged testimony was probative, and finding "no element of unfairness about it," the district court admitted it.

■ We overturn such evidentiary rulings only when we find an abuse of discretion. The inquiry is whether the decision was rendered on a consideration of the relevant factors and whether a clear error of judgment has been made. *United States v. Soulard,* 9 Cir., 1984, 730 F.2d 1292, 1296.

■ We find no abuse of discretion here. The testimony regarding the theft was direct proof that the charged items were stolen from the mail, a necessary element for a violation of 18 U.S.C. § 1708, one of the charged crimes. *United States v. Patterson,* 9 Cir., 1982, 664 F.2d 1346, 1347. Therefore, it was not simply "[e]vidence of other crimes, wrongs or acts" that should have been excluded under Federal Rule of Evidence 404(b), as Campbell contends. *See United States v. Aleman,* 5 Cir., 1979, 592 F.2d 881, 885.

■ Campbell argues that the government should have been required to accept his attorney's offers to stipulate at trial that the checks were stolen and Campbell knew they were stolen. The government refused to accept the stipulations. It had the right to do so. It was entitled to prove these elements of the charged offenses by introduction of probative evidence. *United States v. Gilman,* 9 Cir., 1982, 684 F.2d 616, 622.

■ Campbell argues that, because eyewitnesses were unable to identify him as a participant in the April 1 theft, and because Hill had stated that Campbell was not a participant, evidence that four black men in their twenties or thirties stole from the postal jeep unfairly linked him to that

crime and unduly prejudiced his defense. On the contrary, because the eyewitnesses did not identify Campbell as a participant in the theft, their testimony did not link him directly to the commission of the theft, although it was necessary to establish that the checks had been stolen. The evidence most strongly linking Campbell to the commission of the theft was the testimony that all but one of the fingerprints discovered on the stolen mail were Campbell's; that he said that the checks were stolen in the postal break-in; and that he knew the selling price of those checks. In light of this testimony, we cannot conclude that the prejudicial impact of the theft-related testimony sufficiently outweighed its probative value, so that the district court should have excluded the challenged evidence and compelled the government to accept the offered stipulations. *United States v. Durcan*, 9 Cir., 1976, 539 F.2d 29, 31. The decision in *Durcan* is not to the contrary. There, we held that evidence concerning a prior series of thefts should not have been admitted in a prosecution for smuggling and entry of goods into the United States by means of a false statement. The theft-related evidence in *Durcan* was not probative of any element of the offenses charged and was highly prejudicial, since there was no other evidence linking the defendant to any thefts. *See* 539 F.2d at 30–31.

### III. *Prosecutorial Misconduct.*

The government made the following statement in its closing argument to the jury:

> What Mr. and Mrs. Abrams [sic] showed you was that four men robbed that truck. And that's the significant factor—four men.
>
> Now, the importance of the fact that they're all men, all in their 20's and 30's and all black shows that those—those factors don't eliminate the four men that showed up at the scene of the sale. But we want you to—what we want you to keep in mind is it's not because they are black. It just shows four circumstances; four people together, all male, all the same race, all the same age. It would be just as significant if they were all white or if there were two blacks and two whites and they showed up at the scene—two blacks and two whites.
>
> What it tends to indicate is if you got four guys in on the robbery and four guys show up to sell the stuff, that's significant to show that the second 4 guys are in on it. That's the significance of that testimony. And it was an important piece of testimony that both of those people told you.

Appellant argues that, in making this and other similar arguments, the government misused the burglary evidence by creating the unsubstantiated inference that Campbell was guilty of an uncharged crime.

Campbell also challenges the final statement in the government's rebuttal argument, a statement that goes further than the portions quoted above:

> The evidence in the case, the simple truth and justice require that all of the men who were in on stealing those welfare checks ... be held accountable to you.

█ Even if we assume that Campbell is correct and the government's comments about the April 1 theft should not have been permitted, in light of the strong evidence supporting Campbell's conviction of the offenses with which he was charged, we conclude that any error committed by the trial court, if error there was, was at most harmless.

AFFIRMED.