**UNITED STATES of America, Plaintiff–Appellee and Cross–Appellant,**

v.

**Douglas James HILL, Defendant–Appellant and Cross–Appellee.**

**Nos. 89–10643, 90–10036.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 17, 1991.

Decided June 24, 1991.

As Amended on Denial of Motion
for Modification Dec. 16, 1991.

Jesse J. Garcia, Laura J. Allan, Garcia and Schnayerson, Hayward, Cal., for defendant-appellant and cross-appellee.

John D. Lyons, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee and cross-appellant.

Before SCHROEDER, PREGERSON and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

At Appellant Douglas Hill's trial for conspiracy and attempt to possess with intent to distribute cocaine, testimony was admitted that the appellant had used cocaine with one of the members of the conspiracy five years prior. We conclude the trial court committed reversible error in admitting the evidence of prior cocaine use and that the conviction must be reversed and the case remanded for a new trial. For guidance of the district court on a possible retrial, we also discuss other issues raised by Hill and by the United States in its cross-appeal.

## FACTS AND PROCEEDINGS

In June, 1988, a Drug Enforcement Agency (DEA) agent posing undercover as a cocaine smuggler was introduced to Carlos Gutierrez by a confidential informant. Gutierrez was introduced as someone interested in purchasing large amounts of cocaine. During June and July, 1988, the DEA agent met with Gutierrez and attempted to negotiate cocaine deals with him approximately eight times.

Mary Ann Mulhern is the mother of Gutierrez' child. In mid-July, Gutierrez spoke to Mulhern and asked her to find a financial backer for a cocaine deal he wanted to put together. Mulhern was to receive a "middling fee" for her participation and her motive for engaging in the transaction was to pay off her debts.

Mulhern later contacted appellant Hill, who was a friend of hers, to ask him to loan her $140,000. Hill had loaned Mulhern $4,000 in 1982 to retain a lawyer in a custody dispute case and for moving expenses. For a brief time in 1983, Mulhern and Hill had an intimate relationship. When contacted by Mulhern in 1988, Hill initially refused to become involved but Mulhern eventually prevailed upon him to produce the money and Hill provided $70,-000.

After lining up the money, Mulhern contacted Gutierrez who then set up the cocaine deal with the undercover DEA agent. The DEA agents were not aware of Hill's involvement until the afternoon of the transaction. Surveillance teams observed Gutierrez, Mulhern and Hill leave Gutierrez' apartment building and drive in Hill's car to the designated place for the transaction. Hill had placed his briefcase, containing the $70,000 he provided and $10,000 Gutierrez added, in the trunk of the car.

Once at the site, Hill opened the trunk of his car and then walked to the front of the car with Mulhern. Gutierrez showed the DEA agent the money and they then discussed the exchange at the undercover car. Gutierrez, Hill and Mulhern were then arrested.

The DEA agent prepared an affidavit which was the basis of a search warrant for Hill's home. A triple-beam Ohaus scale seized in the search was introduced into evidence at trial. The DEA agent also testified he found $17,000 in cash in Hill's home.

Mulhern and Gutierrez entered into plea bargains and testified for the prosecution at trial. The government also presented the testimony of two DEA agents. On direct examination the government elicited testimony from Mulhern that during the time she and Hill were seeing each other they would occasionally use cocaine together. The defense objected to this line of questioning and the government countered that the evidence "has to do with this defendant's knowledge and association with the drug world." Reporter's Transcript at p. 132.

At the conclusion of Mulhern's testimony, defense counsel moved for a mistrial. At this point the government stated Mulhern's testimony about the prior drug use was not FED.R.EVID. 404(b) evidence, but "direct evidence concerning the circumstances which led up to the transaction involved." *Id.* at 173. The government explained, and the trial court agreed, that the evidence was direct evidence establishing the circumstances and background under which it became logical and proper for Mulhern to contact Hill in an attempt to obtain money for the cocaine deal. The jury was later instructed that they should consider this evidence for the sole purpose of describing the relationship between Hill and Mulhern.

On appeal, Hill contends Mulhern's testimony was both improper and prejudicial; that the evidence seized pursuant to the search warrant was improperly admitted because the search warrant and search were invalid; and that the prosecutor violated Hill's fifth amendment rights by commenting on his failure to testify. The government cross-appeals Hill's sentence of 51 months incarceration and a $10,000 fine, contending that the court erred by setting Hill's base offense level based on a finding Hill was responsible for only 2.0 to 3.4 kilograms of cocaine. The government also alleges error in the court's downward adjustment in sentencing for acceptance of responsibility and minor participation. The court has jurisdiction of the timely appeal and cross-appeal. 28 U.S.C. § 1291.

## STANDARD OF REVIEW

■ Whether Mulhern's testimony about prior cocaine use with Hill was "other crimes" or prior similar act evidence within the meaning of FED.R.EVID. 404(b) is a question of law that is reviewed *de novo. United States v. Mundi*, 892 F.2d 817, 820 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987). Admission of evidence of prior similar acts or of other crimes is reviewed for abuse of discretion. *United States v. Conners*, 825 F.2d 1384,

1390 (9th Cir.1987); *United States v. Alfonso,* 759 F.2d 728, 739 (9th Cir.1985).

When reviewing a motion to suppress based on lack of probable cause, the court's conclusion is reviewed *de novo. Alfonso,* 759 F.2d at 741. The underlying facts are reviewed under the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. *Id.* Determinations of probable cause must be upheld if, under the totality of the circumstances surrounding a warrant request, the issuing magistrate had a substantial basis for finding probable cause. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983); *United States v. Fannin,* 817 F.2d 1379, 1381 (9th Cir.1987).

Whether there has been a violation of a defendant's fifth amendment right not to testify is reviewed *de novo. United States v. Gray,* 876 F.2d 1411, 1416 (9th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). Application of the United States Sentencing Guidelines is reviewed *de novo. United States v. Howard,* 894 F.2d 1085, 1087 (9th Cir.1990). The district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Burns,* 894 F.2d 334, 336 (9th Cir.1990).

## DISCUSSION

### I. Evidence of Hill's Prior Cocaine Use

Evidence of specific wrongful conduct is not admissible to prove the character of a person or to show he acted in conformity therewith. "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b).

Prior to trial, defense counsel requested the government give him notice of any evidence of prior acts it intended to introduce pursuant to Rule 404(b). Prior to the start of the first day of trial, defense counsel reminded the court of this request. In response, the prosecutor made a relatively sarcastic and only partially informative reply to the effect that Rule 404(b) evidence

was in the eye of the beholder and it was up to defense counsel to determine whether what he had already seen included 404(b) evidence. However, as noted above, in the face of Hill's challenge at trial, the government attempted to justify its use of Mulhern's testimony as direct evidence concerning the circumstances which led up to the transaction involved. On appeal, the government argues alternatively that the evidence was permitted under Rule 404(b) to show intent, motive, and plan and association.

It was error to admit the Mulhern testimony of prior drug use with Hill. The government's argument that the prior use of cocaine evidence was direct evidence of the conspiracy charged and therefore not 404(b) evidence is not persuasive. The government cites us to *United States v. Lester,* 749 F.2d 1288 (9th Cir.1984) and *United States v. Campbell,* 774 F.2d 354 (9th Cir.1985) for the proposition that narcotics involvement can be direct evidence relevant to the proof of conspiracy. Those cases are distinguishable from this case.

In *Lester,* this court rejected the defendants' argument that the trial court erred in admitting, without limiting instructions, evidence of a gang leader's narcotics operation and their connection with it. 749 F.2d at 1299. The trial court specifically rejected Rule 404(b) as a basis for admissibility and found the narcotic ring evidence to be relevant to the proof of the conspiracy to prevent an individual from testifying in the drug prosecution of the gang leader. *Id.* The evidence was direct evidence of a reason why the two defendants would hide a witness from the authorities to prevent his testimony at the drug trial. In this case, Hill's personal drug use five years prior with Mulhern is not direct evidence of the conspiracy to possess and distribute multi-kilos of cocaine in 1988.

In *United States v. Campbell,* the defendant was charged with offenses relating to the theft and sale of stolen mail. 774 F.2d at 355. The defendant was arrested when he and others attempted to sell stolen welfare checks to undercover agents. *Id.* at 355–56. This court upheld the district

court's admission of testimony, objected to by the defendant, about a theft of mail that occurred four days earlier. *Id.* at 356. *Campbell* is distinguishable because the theft testimony was admissible because it was direct proof that the items were stolen from the mail, a necessary element of one of the charged crimes. *Id.*

This court has recognized that evidence of prior criminal acts may be relevant in conspiracy cases to show the background and development of the conspiracy. *United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir.1985). However, in *McKoy*, the prior crime and the charged crime were identical and involved the same individuals. In this case, while the prior drug use involved Mulhern, who was pivotally involved in the conspiracy charged, the prior act was not connected with the development of the conspiracy. The evidence of prior drug use five years prior simply was not evidence of the beginning of the conspiracy charged or of plan and association.

We also reject the government's argument that the evidence should not be treated as Rule 404(b) evidence because it was inextricably intertwined with the evidence of the conspiracy. Mulhern's testimony that she and Hill used small amounts of cocaine some five years prior is not "inextricably intertwined" with "and part of the same transaction" as the conduct alleged in the indictment.[1] *Compare Mundi*, 892 F.2d at 820.

Mulhern's testimony was clearly Rule 404(b) evidence. Rule 404(b) evidence is not necessarily in the eye of the beholder, as described by the government. "The rule is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir.1989) (citation omitted); *see also United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir.1985).

The government failed in carrying its burden of showing how testimony of Hill's prior drug use was relevant in this case. The essential elements of conspiracy are an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose, and the requisite intent necessary to commit the underlying substantive offense. *United States v. Castro*, 887 F.2d 988, 994 (9th Cir.1989). The testimony at issue had no direct bearing on the elements of conspiracy in this case.

The government asserts on appeal that Mulhern's testimony explains why Mulhern approached Hill in the first place and demonstrates Hill's knowledge and intent. This argument is not completely devoid of merit. A juror might wonder why, five years after their relationship had ended, Mulhern thought Hill, a well-off attorney, would give her money to finance a drug transaction. The fact that Mulhern and Hill previously were involved with drugs together might supply the connection. However, the district court held that Mulhern's testimony was direct evidence of the conspiracy and hence gave it more weight than it deserved.

Under Rule 403, evidence may be excluded if its prejudicial effect outweighs its probative value or would tend to mislead the jury. The danger that the jury would view Mulhern's testimony as evidence indicating that Hill was more likely to participate in a drug transaction far outweighed its arguable utility in providing a logical connection between Mulhern and Hill. *Alfonso*, 759 F.2d at 738–40. In addi-

---

**1.** We caution that the doctrine allowing the introduction of "other crimes" evidence where it is "inextricably intertwined" with the charged crime, *see United States v. Soliman*, 813 F.2d 277, 279 (9th Cir.1987), should be applied narrowly to avoid the overly-broad, so-called "res gestae" exception. *See* 22 C. WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5329 at 449–50. As Wright and Graham recognized, the "inseparable crimes" doctrine "became completely perverted when courts began to use the infamous Latin tag 'res gestae' to describe the rule." *Id.* at 447. *See also* 1 WIGMORE, EVIDENCE § 218 at 720–21 (3d ed. 1940) (the "very looseness and obscurity" of the phrase res gestae "lend too many opportunities for its abuse").

tion, the limiting instruction given by the district court did not direct the jury to consider the evidence only for motive, but only served to underscore the prejudicial aspect of the testimony. Therefore, we hold that it was error for the district court to admit this testimony.

There can be little doubt on this record that the true use of the Mulhern testimony was to prove a character trait of Hill's. The testimony was not relevant to any issue at trial. Rule 404(b) thus denies admission to such testimony.

From the record, it appears that the government characterized this evidence as "direct evidence" rather than Rule 404(b) evidence in response to the trial court's pretrial ruling that Hill's possession of personal use drugs would not be admitted into evidence. Reporter's Transcript at p. 172, lines 15–21. Given the trial court's earlier ruling, counsel for the government had to know Mulhern's testimony would not have been admitted if it had been offered under Rule 404(b). Counsel also knew he had not disclosed his intent to offer this evidence.

We have determined that it was an abuse of discretion to admit the Mulhern testimony about drug use. Although the court conducted a Rule 403 weighing of prejudice versus probative value, the requirements of Rule 404(b) were never considered. The government should not have offered this evidence. We remind the government's trial counsel and his superior of the basic duty of counsel for the government:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), *overruled on other grounds, Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

██ We have determined the Mulhern testimony about drug use with Hill was inadmissible character evidence under Rule 404(b) and that it was an abuse of discretion to admit the evidence. Furthermore, the evidence was not admissible on any of the grounds advanced by the government and relied on by the district court. We must next determine if this evidentiary ruling constituted more than harmless error; that is, if whether it affected Hill's substantial rights. *United States v. Castillo*, 615 F.2d 878, 883 (9th Cir.1980); *see also* FED.R.EVID. 103(a); FED.R.CRIM.P. 52(a). Errors which do not rise to constitutional dimensions, such as this one, are not harmless unless it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict. *Brown*, 880 F.2d at 1016 (9th Cir.1989); *see United States v. Valle–Valdez*, 554 F.2d 911, 916 (9th Cir.1977).

██ The government argues Hill has failed to show he suffered any real prejudice from the testimony, as it was brief and greatly diminished in significance by other testimony. The government also points to the limiting instruction given by the trial court. Unfortunately, the limiting instruction probably did not help matters in this particular case. It served only to limit the jury's consideration to an irrelevant and prejudicial point. While the testimony was brief, the brevity did nothing to reduce its prejudicial qualities. The testimony came early on in the direct examination of Mulhern, the one witness who had the most to say about Hill's involvement in the transaction.

We have reviewed the entire record in this case to determine whether the jury would have reached a different conclusion absent the error. This is a close case. The

undercover DEA agent's testimony related primarily to his dealings and negotiations with Gutierrez. The agent testified he had no knowledge of Mr. Hill until the day of the arrest. The DEA agents' testimony about Hill's presence at the surveillance site and the arrest site was very suggestive. However, this evidence alone could not have convicted Hill of the crimes he was charged with. The testimony of Gutierrez was internally inconsistent, and even from reading a cold record, of questionable credibility.

Mulhern's testimony contained some inconsistencies and some failures of recollection. Mulhern alternated between saying she *believed* that she told Hill the money was for a cocaine transaction and that she *did* tell him it was for a cocaine deal her friend Carlos was involved in.

In a case such as this the harmless error rule is difficult to apply. There is no precise formula to be applied. If the case against Hill was as strong as the government now contends, it is obvious to an experienced attorney that the Mulhern testimony at issue here was of doubtful utility, particularly when the government has advanced an array of equally unconvincing grounds for the admission of the evidence. We therefore view the government's urgings of "harmless error" with some skepticism.

After reviewing the entire record in this case, we cannot say with certainty that the error did not influence the jury and materially affect the verdict in this case. The trial judge noted at page 3 of the order granting bail to Hill pending appeal:

> In this case defendant is appealing the legality of the search of his residence and the admission of evidence concerning his prior drug use. The appeal is not a delay tactic, but rather a direct effort to challenge the current applicable legal precedent. Moreover, should defendant's appeal succeed, this Court is of the opinion that a new trial is reasonably probable, as the appellate court is not likely to find the error, if there was error, harmless or immaterial.

Given the trial judge's ability to observe the trial first hand, this statement cannot be taken lightly. We hold that the error in admitting the Mulhern testimony about prior drug use with Hill affected Hill's substantial rights. Accordingly, the judgment must be reversed.

## II. Denial of the Motion to Suppress

 Hill also challenges the denial of his motion to suppress the introduction of the Ohaus scale found in the search of his house on the basis that the search was improper and the evidence gained as a result of the search should have been suppressed. Hill's basic argument is that his contact with the other members of the conspiracy was so limited that the government did not have probable cause to search his house, particularly considering the extended contact between the DEA agent and Gutierrez. Therefore, Hill argues, the search of his residence was really justified by no more than the fact that he had been arrested. *See United States v. Lucarz*, 430 F.2d 1051 (9th Cir.1970).

A similar argument was advanced in *United States v. Fannin*, 817 F.2d 1379 (9th Cir.1987). In that case, the defendant had arguably less connection with the officers and with the conspiracy, so far as the DEA agent's knowledge went, than did Hill. In *Fannin*, as here, the search warrant was partly based on the affidavit of an experienced agent, which stated, in part, that it is common for drug traffickers to maintain books, records and other documents and items relating to the conspiracy. As this court noted in *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986):

> Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location. A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. In the case of drug dealers, evidence is likely to be found where the dealers live. When the traffickers consist of a ring leader and assistants, a fair probability exists that

drugs will be present at the assistants' residence as well as at the ring leader's. *Id.* at 1399 (citations omitted). Therefore, we uphold the decision of the district court refusing to suppress the scale in question and in admitting it at trial.

### III. Prosecutorial Comments

Hill's last contention is that the government's attorney violated his fifth amendment rights by commenting on Hill's failure to testify. In rebuttal closing argument, the prosecutor stated:

> And then you throw in Carlos Gutierrez and the additional details that he brings to the case, it's beyond any possibility, or speculation, or any other explanation, and you didn't hear any other explanation for all those things.

Reporter's Transcript at p. 420. Hill's motion for a mistrial following closing argument was denied.

The government responds by pointing out that, in context, the comments of the prosecutor do no more than respond to comments of defense counsel. A prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased as to call attention to the defendant's own failure to testify. *United States v. Castillo,* 866 F.2d 1071, 1083 (9th Cir.1989); *see also United States v. Yu-Chong,* 920 F.2d 594, 598 (9th Cir.1990).

While the other comments Hill complains about were responses to arguments made by defense counsel, the "no explanation" comment runs close to the line, even in the context of a rebuttal argument. We reiterate what the *Castillo* court said: "As a member of the federal government, every Assistant United States Attorney has a constitutionally imposed duty to protect every individual's privilege against self-incrimination." 866 F.2d at 1083–84.

Under the law of this circuit, the "no explanation" statement by the prosecutor was injudicious, but not violative of the constitution. *See id.* Improper prosecutorial remarks alone do not justify reversal in an otherwise fair proceeding. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). However, in this case we are concerned about the cumulative impact of this error and the error in the admission of the prior drug use testimony. *See United States v. Wallace,* 848 F.2d 1464, 1475–76 (9th Cir.1988). This concern highlights the risk the prosecution takes when it runs "perilously close to invading the defendant's rights." *United States v. Fanello,* 662 F.2d 505, 509 n. 7 (8th Cir. 1981). Since we are reversing the case and remanding it for a new trial on other grounds, the United States Attorney's Office is in a position to insure that this impropriety is not repeated upon any retrial.

### IV. The Government's Cross–Appeal of Hill's Sentence

The government appeals three issues relating to the trial court's sentencing of Hill. First, the government objects to the district court's setting of the base offense level on a finding that Hill was responsible for between 2.0 and 3.4 kilograms of cocaine, arguing that there is no basis in the record for these amounts to be used in sentencing. The government argues that the conspiracy was one of attempting to obtain 10 kilograms of cocaine. Therefore, the government argues, Hill is responsible for either the full 10 kilos under negotiation, or at least for 5 kilos, since he provided half the money needed for the 10 kilos.

It is enough to point out to the government that while the district court may well have been justified in fixing a base offense level on a finding of what the conspiracy was intending to acquire, the government has cited us to no authority that the district court was required to do so. The district court approximated the quantity of drugs in this case in light of the fact that there was no drug seizure because the transaction was a reverse sting, in which the government controlled the amount of cocaine. *See* United States Sentencing Guideline ("U.S.S.G.") § 2D1.4, Application Note 2; § 1B1.3, Application Note 1. The district court sentenced based on a finding that the drug transaction in question did not have a defined quantity, and a rough approximation of prevailing cocaine

prices. The district court's findings were sufficiently specific, were not clearly erroneous, and will not be disturbed on appeal.

 Second, the government contends Hill was not entitled to a downward adjustment for acceptance of responsibility since he did not in fact accept responsibility. In addition to the other findings of the court, the government is referred to the Reporter's Transcript for December 13, 1989, at page 25, where Hill said in open court: "I apologize to the Court and the Government. I—I deeply regret what I did. It was stupid. *It's criminal.* It's cost me my profession; the respect of a lot of people that I care about. Certainly my family and friends. I am very frightened and very sorry." (Emphasis supplied.)

The government focused on the eleventh-hour nature of Hill's acceptance of responsibility and asserts that Hill never did accept his responsibility for the crimes in question. Hill's words to the court refute this contention. Given the sentencing judge's unique position to evaluate the defendant's acceptance of responsibility, we are required to give it great deference on appeal. U.S.S.G. § 3E1.1, Application Note 5. The downward adjustment for acceptance of responsibility is not clearly erroneous and will not be disturbed on appeal.

Finally, the government argues Hill was not entitled to a downward adjustment for being a minor participant. The government argues a "money man" could never be a minor participant.

Section 3B1.2 of the Sentencing Guidelines provides for "a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, Background Note. The application of this section is "heavily dependent upon the facts of the particular case." *Id.* The district court found that the facts established at trial showed Hill "was not an organizer or supervisor in the offense, but rather was a minor participant and the least culpable of the three conspirators." District Court Report of Statement of Reasons for Imposing Sentence at p. 2. The court's decision to make a downward adjustment for minor participation is not clearly erroneous and will not be disturbed on appeal.

### CONCLUSION

In summary, the admission of prior acts evidence against Hill was an abuse of discretion and not harmless error. Accordingly, the judgment of conviction is REVERSED and the case REMANDED for a new trial or other disposition.