5 F.3d 540
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sam BARNES, Defendant-Appellant.
 No. 92-10355.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 1993.
Decided Sept. 3, 1993.
 
 Appeal from the United States District Court for the District of Arizona, No. CR-91-00043-01-RCB; Robert C. Broomfield, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before: REINHARDT, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sam Barnes appeals his conviction and sentence for attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. Sec. 841(a)(1). We have jurisdiction under 28 U.S.C. Sec. 1291 (1988), and we affirm.
 
 
 3
 * Barnes argues the district court erred in admitting evidence of prior conduct pursuant to Fed.R.Evid. 404(b). "We review the trial court's decision to admit evidence of prior criminal acts under Fed.R.Evid. 404(b) for abuse of discretion." United States v. Spillone, 879 F.2d 514, 518 (9th Cir.1989), cert. denied, 498 U.S. 878 (1990).
 
 
 4
 Evidence of prior conduct "may be relevant to a fact of consequence, or it may be relevant only insofar as it proves the character of the defendant in order to show action in conformity therewith, in which case it is a form of character evidence." McKinney v. Rees, No. 89-55869, slip op. at 5954 (9th Cir. June 10, 1993). Fed.R.Evid. 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." Huddleston v. United States, 485 U.S. 681, 685 (1988). "We have uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982). "The Government, however, must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." Id.
 
 
 5
 We apply a four-part test to determine whether evidence of Barnes's prior conduct is admissible under Rule 404(b):
 
 
 6
 (1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged.
 
 
 7
 United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991); see also Spillone, 879 F.2d at 518-20. "Once its relevancy is shown, the evidence is admissible only after the Government demonstrates to the trial court that, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." Mehrmanesh, 689 F.2d at 830.
 
 A. Cocaine Sales in 1985
 
 8
 Barnes contends the district court erred in admitting testimony from his former wife that Barnes packaged and sold small quantities of cocaine in 1985. Barnes argues the evidence is inadmissible because (1) the government did not articulate precisely the hypothesis by which one or more consequential facts could be inferred from the testimony; (2) the prior acts of selling cocaine are dissimilar in both size and type of drug to the acts upon which the charge in the instant matter is based; and (3) the sales of cocaine in 1985 are too remote to be admitted in this case.
 
 
 9
 We reject all three of Barnes's arguments. First, although Barnes correctly asserts that the government must articulate the evidential hypothesis by which a fact of consequence may be inferred from the prior acts, he cites no authority holding that the district court, in an in limine proceeding, must specify the contested issues to which similar act evidence is relevant. To the contrary, we have held that "[e]vidence is deemed admissible under Rule 404(b) on appeal if it is admissible on any ground.... It is unnecessary to specify the exception within which a particular line of inquiry or piece of evidence is admissible. It is enough that the evidence is relevant to an issue in the case other than a defendant's criminal propensity." United States v. Green, 648 F.2d 587, 592 (9th Cir.1981) (per curiam) (internal citations omitted).
 
 
 10
 We believe the district court and the government have adequately explicated a theory of admissibility for the prior act evidence. Barnes concedes that the issue of his intent at the time of the drug sale was contested at trial. To establish a violation of 21 U.S.C. Sec. 841(a)(1), the government is required to prove Barnes possessed the requisite intent. "His intent was thus a material issue in the case." United States v. Adrian, 978 F.2d 486, 492 (9th Cir.1992). The testimony of Deborah Barnes was offered by the government in the second trial specifically to rebut Barnes's defense argued in both trials--that he set up the drug transaction only to get information necessary to cause the undercover officer posing as the seller to be arrested.
 
 
 11
 Second, we find the prior acts of packaging and selling cocaine are sufficiently similar to the acts underlying the instant charge. "We have consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics." Mehrmanesh, 689 F.2d at 832. Furthermore, "where evidence is offered to show knowledge and intent, it is not necessary that the illegal drug involved in the prior offense be identical to the illegal drug involved in the charged crimes." United States v. Rubio-Villareal, 927 F.2d 1495, 1503 n. 9 (9th Cir.1991), modified in part, 967 F.2d 294 (9th Cir.1992) (en banc). Therefore, we hold the similarity requirement is satisfied in this case.
 
 
 12
 Third, we reject the argument that evidence of Barnes's activities in 1985 are too remote to be admitted. We have not adopted "an inflexible rule regarding remoteness in the context of Rule 404(b)." United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990), cert. dismissed, 113 S.Ct. 486 (1992). "Depending upon the theory of admissibility and the similarity of the acts, for example, some remote acts may be extremely probative and relevant." Spillone, 879 F.2d at 519. In fact, we have permitted the introduction of similar acts that are ten years old or older. Id.; see also Hadley, 918 F.2d at 851 (allowing the admission of evidence of prior acts occurring twelve years before trial). Here, Barnes's prior acts involving cocaine occurred only six years before his 1991 involvement with methamphetamine. Given the similarity in the acts, we conclude Barnes's acts of packaging and selling cocaine in 1985 are not too remote as to require the exclusion of evidence of those prior acts. The admission of this evidence did not constitute an abuse of discretion.
 
 B. Prior Drug Use
 
 13
 Barnes also contends the district court erred in admitting into evidence testimony given by his former wife concerning his prior drug use. Deborah Barnes testified that in January, 1991, she noticed several physical and emotional changes in her former husband, including "a big weight loss, irrational behavior, [and that] he was very irate whenever [she] had to deal with him regarding the[ir] children." She further testified that Barnes had exhibited these same physical and emotional changes when he was using methamphetamine and cocaine between 1984 and 1985.
 
 
 14
 Barnes now contends this evidence was prior conduct evidence, which should have been excluded at trial under Rule 404(b). Certainly, evidence of prior drug use is inadmissible in a prosecution for possession with intent to distribute. Mehrmanesh, 689 F.2d at 831-32. If the government had offered the evidence of Barnes's prior drug use solely to prove the character of Barnes in order to show action in conformity therewith, then the evidence should have been excluded, "as such evidence is not relevant to any fact of consequence." McKinney, slip op. at 5956.
 
 
 15
 Here, however, the evidence concerning Barnes's physical appearance during his prior drug use was not admitted as prior act evidence. Instead, the government introduced this evidence to contradict Barnes's defense that he had no intent to "do[ ] the transaction, or leav[e] the room with any of the drugs, or tak[e] possession of the drugs." RT 3/4/92 at 15. Testimony concerning Barnes's appearance in January, 1991, is relevant to show Barnes was using drugs at the time of his arrest, a fact which tends to contradict his claim that he did not intend to possess the methamphetamine. See McKinney, slip op. at 5960 ("[Evidence concerning defendant's possession of a knife at a particular time] is not evidence of another act, but of a simple fact: whether [the defendant] was the owner of a knife on the date of the murder."). Therefore, because the testimony concerning Barnes's appearance when he was using drugs on prior occasions makes a fact of consequence, his intent to possess the methamphetamine, more probable, its admission did not violate "the historically grounded rule against the use of 'other acts' evidence to prove character." Id. at 5961.
 
 
 16
 Moreover, although this evidence is prejudicial, we cannot find fault with the district court's conclusion that the probative force was sufficient to overcome the prejudice to Barnes. Barnes's defense made his state of mind at the time of the transaction the central issue at trial, so any testimony concerning Barnes's appearance, which reflects on that state of mind, is relevant. Here, Deborah Barnes's testimony supported the inference that Barnes was using methamphetamine at a time just prior to his arrest. The fact that he was using the drugs in January, 1991, contradicts his later claim that he was attempting to set up the drug transaction merely to cause the undercover agent to be arrested. The admission of this evidence did not constitute an abuse of discretion.
 
 II
 
 17
 Barnes contends the trial court erred in calculating Barnes's base offense level pursuant to Sec. 2D1.1 and Sec. 2D1.4 of the Sentencing Guidelines. Specifically, Barnes argues the evidence presented at trial does not support the court's determination that Barnes negotiated to buy an additional four pounds of methamphetamine. "The district court's findings of fact are reviewed for clear error, and due deference is given to its application of the guidelines to the facts." United States v. Motz, 936 F.2d 1021, 1026 (9th Cir.1991). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)), cert. denied, 112 S.Ct. 3056 (1992).
 
 
 18
 We find plenty of evidence in the record to support the district court's conclusion that Barnes's was negotiating for four additional pounds of methamphetamine. In his conversation with undercover agent Cooke just prior to his arrest, Barnes made a number of statements indicative of negotiations for his purchase of additional methamphetamine. These statements clearly demonstrate (1) Barnes was negotiating a five-pound deal; (2) he intended to purchase the other four pounds over the next two or three days; (3) he assured undercover agent Cooke that Cooke would not have to look elsewhere for a buyer for the additional four pounds because Barnes would purchase them; (4) he offered his home for the location of those future purchases; and (5) he negotiated a volume-discounted price for the first pound he bought based on his promise to buy four additional pounds. We cannot conclude the district court clearly erred in finding Barnes had negotiated for the additional four pounds of methamphetamine. See United States v. Molina, 934 F.2d 1440, 1451 n. 14 (9th Cir.1991) (holding evidence that defendant spoke to drug seller regarding amount and price of cocaine to be purchased demonstrated negotiation).
 
 
 19
 Nevertheless, Barnes argues that his actions and words do not amount to negotiation based on the Eight Circuit's holding in United States v. Foley, 906 F.2d 1261 (8th Cir.1990). In Foley, the court concluded the defendant's pricing of additional quantities of cocaine when asked by an undercover agent would not support a finding that negotiation for another sale took place. Foley, 906 F.2d at 1264. Here, Barnes did more than respond to the undercover agent's offer to sell more methamphetamine. Barnes personally established a time frame for the additional sales, offered his own home for the location of those sales, and negotiated a volume-discounted price for each pound based on his promise to buy a total of five pounds of methamphetamine. Barnes's argument based on Foley is not persuasive in this case.
 
 
 20
 Finally, Barnes argues the district court erred in finding that Barnes was reasonably capable of consummating the purchase of the four additional pounds of methamphetamine. However, the record clearly supports the district court's finding that Barnes could finance the additional purchases through sale of the first pound he purchased with cash.
 
 
 21
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 22
 Both common sense and the law of evidence tell us that "[p]roof of an intent to do one thing on an earlier occasion proves little about an intent to execute a dissimilar act at a later time." United States v. Alfonso, 759 F.2d 728, 740 (9th Cir.1985). In my opinion, the majority far exceeds the scope of existing circuit precedent by holding that the government's evidence of defendant Sam Barnes' drug sales and drug use was admissible in order to prove his intent to possess and distribute drugs. Accordingly, I dissent.
 
 
 23
 A. Evidence of Barnes' Drug Sales.
 
 
 24
 Prior bad acts are not admissible as character evidence. See Fed.R.Evid. 404(b). This is because "[c]haracter evidence is of slight probative value and may be very prejudicial." See id. cmt (internal quotes omitted); see also 1A John H. Wigmore, Evidence in Trials at Common Law Sec. 58.2, at 1212 (rev. ed. 1983) (discussing why prior bad acts evidence is generally inadmissible). Prior bad acts are admissible, however, under limited circumstances for certain specific purposes. One purpose is to prove that the defendant intended to commit the crime. See Fed.R.Evid. 404(b) cmt.
 
 
 25
 Because the admissibility of prior bad acts to prove intent is an exception to the general rule of nonadmissibility, we must scrutinize attempts to introduce such evidence carefully in order to prevent the principles behind the general rule from being eroded. Accordingly, our circuit has established a four-part test for determining when prior bad acts can be admitted into evidence. See United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991).
 
 
 26
 Among other things, in intent cases the four-part test requires the government to prove that the prior bad act was not "too remote in time" and that the prior bad act was "similar to the offense charged." See id.; United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982) (placing the burden of proof on the government). Here, the majority fails to demonstrate how the government has proved either non-remoteness or similarity with respect to its evidence of Barnes' prior drug sales.[1]
 
 
 27
 1. Remoteness. The majority fails to demonstrate how the government has proved that Barnes' prior acts of selling drugs--which occurred at least six years before the charged offense--were not "too remote in time" as to allow admissibility under Fed.R.Evid. 404(b).
 
 
 28
 The majority correctly points out that our circuit has not adopted "an inflexible rule regarding remoteness." Majority Opinion, supra, at 4 (internal quotes omitted). It then announces, quite surprisingly, what amounts to its own novel "rule"; that ten-year-old evdience of prior bad acts is generally not too remote to be admissible. The majority cites to two completely inapposite cases to support its argument: United States v. Spillone, 879 F.2d 514 (9th Cir.1989), cert. denied, 498 U.S. 878 (1990) a case which involved a conviction for credit extortion; and United States v. Hadley, 918 F.2d 848 (9th Cir.1990), cert. dismissed, 113 S.Ct. 486 (1992), a case which involved a child abuse conviction. Neither case involved a drug transaction, and neither case stands for the majority's bright-line proposition that any evidence less than ten years old is generally admissible.
 
 
 29
 The majority compounds its sins by failing to discuss a single narcotics case. Our circuit has generally held that six-year-old evidence of drug sales is too remote to be admissible. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.1992) ("Ordinarily, five-year-old evidence of drug sales will not be particularly probative of intent to sell drugs today."), cert. denied, 113 S.Ct. 2348 (1983); Alfonso, 759 F.2d at 740 (holding that five-year-old evidence of a cocaine transaction was too remote to be admissible); cf. United States v. Davis, 657 F.2d 637 (4th Cir.1981) (holding that six-year-old evidence of heroin dealing was too remote). Accordingly, I believe that case law requires the conclusion that the government's six-year-old evidence of Barnes' past drug sales is too remote to be admissible under Rule 404(b).
 
 
 30
 2. Dissimilarity. The majority also fails to demonstrate how the government has proved that Barnes' prior acts of selling small quantities of cocaine are sufficiently "similar" to the charged offense of purchasing a pound of methamphetamine for distribution as to be admissible under Fed.R.Evid. 404(b).
 
 
 31
 The majority holds that the selling of small bags of cocaine to fellow customers in a bar is sufficiently similar to engaging in a major drug transaction--purchasing over a pound of methamphetamine--to be admissible under Fed.R.Evid. 404(b), even though the two acts involved completely different elements (selling vs. purchasing), quantities (small vs. large), and substances (cocaine vs. methamphetamine).
 
 
 32
 To support its argument, the majority cites Mehrmanesh, 689 F.2d at 832, and United States v. Rubio-Villareal, 927 F.2d 1495, 1503 n. 9 (9th Cir.1991), modified, 967 F.2d 294 (9th Cir.1992). Neither case is applicable because both cases had some overlap between the prior bad act and the charged offense. For example, although Merhrmanesh involved two different acts (selling vs. possession), the drugs at issue in both cases were identical (both involved heroin). Similarly, although Rubio-Villareal involved two different drugs (cocaine vs. marijuana), both cases involved identical acts (both involved smuggling drugs in a truck with a secret compartment). By contrast, this case involved different acts as well as different drugs.
 
 
 33
 In fact, the majority's holding squarely contradicts a well-established line of cases that prohibits the government from using precisely such dissimilar evidence. See, e.g., United States v. Garcia-Orozco, No. 92-50613 (9th Cir. July 12, 1993) (holding that the act of riding within a car that contained heroin is too dissimilar to the act of smuggling marijuana in a car); Alfonso, 759 F.2d at 739 (holding that the act of unloading drugs is too dissimilar to the act of buying drugs); United States v. Hernandez-Miranda, 601 F.2d 1104, 1108-09 (9th Cir.1979) (holding that the act of smuggling marijuana in a backpack is too dissimilar to the act of smuggling heroin in a car). Accordingly, I believe that the government's evidence of Barnes' past drug sales is too dissimilar to be admissible under Rule 404(b).
 
 
 34
 B. Evidence of Barnes' Drug Use.
 
 
 35
 The majority holds that the trial court did not err in admitting testimony from Barnes' former wife about his drug use. Initially, I note that our circuit has held that evidence of a defendant's prior drug use is inadmissible to prove a subsequent charge of possession with intent to distribute. See, e.g., United States v. Hill, 953 F.2d 452, 456-58 (9th Cir.1991); Mehrmanesh, 689 F.2d at 831-32; United States v. Masters, 450 F.2d 866, 867-68 (9th Cir.), cert. denied, 405 U.S. 1044 (1972). This is because evidence that brands the defendant as a drug user is of slight probative value to the factfinding process, yet is highly prejudicial to the defendant. Accordingly, we have repeatedly warned the government not to use this tactic in its litigation. See, e.g., Hill, 953 F.2d at 458 (criticizing the government for offering such evidence and reminding it of its "duty to refrain from improper methods calculated to produce a wrongful conviction"); Masters, 450 F.2d at 868 (commenting that "[w]e strongly disapprove of this prosecution tactic").
 
 
 36
 The majority briefly acknowledges this important principle, but then states that Barnes' prior use evidence "is relevant to show Barnes was using drugs at the time of his arrest, a fact which would contradict his claim that he did not intend to possess and distribute the methamphetamine." Majority Opinion, supra, at 6 (emphasis added). The majority argues that the government did not introduce the disputed evidence in order to prove Barnes' intent by way of prior use evidence; rather, the government introduced the evidence to prove Barnes' contemporaneous drug use at the time of his arrest, which in turn would prove his intent to possess and distribute drugs.
 
 
 37
 The majority's argument is simply incorrect. In deciding the above cases concerning the admissibility of prior use evidence, our circuit has held that there is no logical connection between drug use--prior or contemporaneous--and other drug transactions. For example, in Masters, we held that the district court erred in allowing questions relating to the defendants' familiarity with and use of marijuana in order to prove their intent to smuggle marijuana. See Masters, 450 F.2d at 867-68. Similarly, in Hill, we held that an ex-girlfriend's testimony of the defendant's cocaine use was inadmissible in order to prove his intent to possess and distribute cocaine. See Hill, 953 F.2d at 456-59. Finally, in Mehrmanesh, we held that the district court erred in admitting evidence of the defendant's drug use in order to prove his intent to possess and distribute heroin. See Mehrmanesh, 689 F.2d at 831-32.
 
 
 38
 In all those cases, we rejected the government's theory that drug use and other drug transactions were connected. Our reasoning did not depend on the time that had elapsed between the disputed acts; we simply held that there was no logical connection between the two acts. See, e.g., Masters, 450 F.2d at 867 ("On [the government's] theory, anyone who drank during the Prohibition era should have been a rumrunning suspect."). The message the jury receives when a court admits evidence of drug use or drinking is that the defendant is a bad actor and therefore probably committed the crime. See id. at 868 ("The prejudicial nature of such an inquiry far outweighs whatever minute probative value it may have for showing commission of the [charged] offense."); cf. Hill, 953 F.2d at 457 (holding that evidence of the defendant's drug use "far outweighed its arguable utility"). In my opinion, the majority's wholly conclusory attempt at distinguishing the case before us from our prior cases does precisely what circuit law prohibits--it uses evidence of a defendant's drug use in order to establish his intent to possess and distribute drugs.
 
 
 39
 C. Harmless Error.
 
 
 40
 Finally, I believe that the district court's error in admitting the prior bad acts evidence was not harmless. Barnes' first trial ended in a mistrial because of a hung jury. According to the government, the main difference between that trial and this one was that, here, Barnes' ex-wife testified against him and told the tale about his drug sales and drug use. See Appellee's Brief at 6. One's sense of fairness must surely be affronted by a conviction based on so questionable a foundation. In my opinion, it is impossible to say with any fair assurance that, had Barnes' ex-wife's testimony been excluded by the district court, the verdict would have been the same. See Kotteakos v. United States, 328 U.S. 750, 764-65 (1946).
 
 
 41
 * * *
 
 
 42
 In sum, because (1) the government failed to show that Barnes' prior cocaine sales were either not "too remote in time" or "similar to the offense charged," and (2) Barnes' drug use was not relevant to proving his intent to possess and distribute methamphetamine, I would hold that the trial court abused its discretion in admitting the evidence against Barnes. Because I also believe that the errors were not harmless, I would reverse Barnes' conviction and order a new trial. Accordingly, I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government failed to articulate any hypothesis for offering its evidence at the time of the trial. See R.T. 3/5/92, at 3 (showing that the government merely said that it "believe[d] all of those matters are admissible under the prevailing case law"). Accordingly, the government should not be allowed to conjure up post hoc rationales for the first time on appeal. See, e.g., United States v. Arambula-Ruiz, 987 F.2d 599, 602-03 (9th Cir.1993) (holding that the government "must articulate precisely the evidential hypothesis" (internal citation omitted))
 The majority responds to this argument by citing to United States v. Green, 648 F.2d 587 (1981). Green stands for the proposition that the district court is not required to specify the precise grounds for admitting evidence under Rule 404(b). Id. at 592. Because Arambula-Ruiz imposes a burden on the government to specify its reasons for offering evidence under 404(b), however, Green is completely inapposite. In any event, even the government's post hoc rationales conflict with existing circuit precedent.