UNITED STATES of America,
Plaintiff-Appellee,

v.

Candelario ANGULO–LOPEZ,
Defendant-Appellant.

No. 85–3117.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1986.

Decided June 17, 1986.

Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Clayton C. Patrick, Salem, Or., for defendant-appellant.

Before FLETCHER, ALARCON, and WIGGINS, Circuit Judges.

FLETCHER, Circuit Judge:

After his pretrial motion to suppress evidence was denied, Candelario Angulo-Lopez entered a conditional guilty plea to two counts of violation of 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute. The district court accepted the plea and entered judgment against Angulo-Lopez. He appeals, asserting that the warrant authorizing the search of his residence was not based on probable cause. We affirm.

## FACTS

On May 25, 1985, police officers in Salem, Oregon executed a search warrant for appellant's residence at 4669 Fuhrer Street in Salem. The officers seized substances that later proved to be heroin and cocaine.

The search warrant was based on an affidavit of a Special Agent of the Drug Enforcement Administration (DEA). He detailed in the thirteen-page affidavit a series of observations relayed to him by DEA and local police officers and by a number of confidential informants. The informants included two citizen-informants and two criminal informants. All four informants had provided the police officers with accurate information in the past regarding the possession or sale of narcotics.

The information in the affidavit from these informants, DEA agents, and Oregon

police officers was the following: Bessie and Simon Lopez, the appellant's sister and brother-in-law, admitted in late April and early May, 1985, to selling heroin. The appellant was seen at the Lopez residence during that period of time, and Simon Lopez had stated to one of the informants that the appellant was living at the Lopez residence. One criminal informant stated that Simon Lopez had advised him that Lopez could sell the informant heroin and in fact the informant had obtained some heroin from Lopez at a northeast Salem shopping center.

In late April and early May, 1985, police surveillance units observed three encounters between the appellant and unidentified individuals in shopping center parking lots. On each occasion items were exchanged or appeared to be exchanged between the appellant and the other person. During the same period, Bessie Lopez told the citizen-informants that her husband and the appellant were currently selling heroin. The citizen-informants also stated that the appellant was selling heroin out of his new residence at 4669 Fuhrer Street. Police investigation of electric and telephone company records indicated that the occupant at 4669 Fuhrer Street was the appellant.

## STANDARD OF REVIEW

The standard of review for the issuance of a search warrant requires us to examine whether the magistrate had a substantial basis for concluding that the affidavit in support of the warrant established probable cause. *United States v. Seybold,* 726 F.2d 502, 503 (9th Cir.1984); *see Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). This inquiry is less probing than de novo review and shows deference to the issuing magistrate's determination. *Seybold,* 726 F.2d at 503.

## PROBABLE CAUSE

To determine whether information provided by informants establishes probable cause, a magistrate looks to the "totality of the circumstances." *Illinois v. Gates,* 462

U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *see United States v. Miller,* 753 F.2d 1475, 1479 (9th Cir.1985). Prior to the United States Supreme Court decision in *Gates,* the Court employed the two prong *Aguilar-Spinelli* test. *See Aguilar v. Texas,* 378 U.S. 108, 113–14, 84 S.Ct. 1509, 1513–14, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637 (1969). The first prong, the "veracity" prong, required that the affidavit in support of the search warrant offer the magistrate a basis to conclude that the affiant's informant is trustworthy or reliable. *See Spinelli,* 393 U.S. at 415–16, 89 S.Ct. at 588–89. The second prong, or "basis of knowledge" prong, required that the affidavit reveal how the informant came by his or her knowledge. The two-prong test ensured that the magistrate perform the independent evaluation of probable cause required by the Fourth Amendment. *Id.; see also Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948). The affidavit thus must demonstrate why the affiant believes the informant to be trustworthy and how the informant came upon the information alleged.

The Supreme Court departed from the *Aguilar-Spinelli* test in *Illinois v. Gates,* substituting a more flexible "totality of the circumstances test." 462 U.S. at 238, 103 S.Ct. at 2332. Under the *Gates* test, a weakness in either the "veracity" or "basis of knowledge" prong is not fatal to a finding of probable cause, as long as the issuing magistrate had a "substantial basis" for the finding. 462 U.S. at 238, 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. Evidence bearing on the veracity of the informant and his basis of knowledge is considered together with other relevant evidence in making the probable cause determination based on the totality of the circumstances. *See United States v. Roberts,* 747 F.2d 537, 543 (9th Cir.1984); *United States v. Estrada,* 733 F.2d 683, 685 (9th Cir.), *cert. denied,* ——

U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984).

An informant's veracity or trustworthiness may be established in a number of ways. If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions. *United States v. Alexander,* 761 F.2d 1294, 1300 (9th Cir.1985). When the information provided in the past involved the same type of criminal activity as the current information, the inference of trustworthiness is even stronger. *See Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. Veracity also may be established through admissions against penal interest. *United States v. Roberts,* 747 F.2d 537, 544 (9th Cir.1984); *United States v. Estrada,* 733 F.2d 683, 686 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 168, 194, 83 L.Ed.2d 103 (1984). Finally, an informant's reliability may be demonstrated through independent police corroboration of the information provided. *United States v. Freitas,* 716 F.2d 1216, 1222 (9th Cir.1983); *see also United States v. Fixen,* 780 F.2d 1434, 1437–38 (9th Cir.1986).

Certain classes of informants are considered more reliable than others. For example, police officers may be presumed reliable. *See United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965); *United States v. Beusch,* 596 F.2d 871, 874 (9th Cir.1979). Citizen informants, while not carrying the same presumption of reliability as police officers, *see United States v. Sierra-Hernandez,* 581 F.2d 760, 763 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 33 (1978), nevertheless require less evidence to establish their veracity than criminal informants, *see Rutherford v. Cupp,* 508 F.2d 122, 123 (9th Cir.1974), *cert. denied,* 421 U.S. 933, 95 S.Ct. 1663, 44 L.Ed.2d 92 (1975); *see also United States v. Fooladi,* 703 F.2d 180, 183 (5th Cir.1983), *aff'd on rehearing,* 746 F.2d 1027 (5th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985); *United States v. Unger,* 469 F.2d 1283, 1286–87 (7th Cir. 1972), *cert. denied,* 411 U.S. 920, 93 S.Ct. 1546, 36 L.Ed.2d 313 (1973); *Easton v. City of Boulder,* 776 F.2d 1441, 1449–50 (10th Cir.1985). A citizen informant's veracity may be established by the absence of an apparent motive to falsify and independent police corroboration of the details provided by the informant. *United States v. Gagnon,* 635 F.2d 766, 768 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *Rutherford v. Cupp,* 508 F.2d at 123.

Hearsay reported by informants is no bar to a finding of probable cause. When the circumstances suggest veracity, such as an admission against penal interest, a statement made to an informant may be considered reliable. *United States v. Wylie,* 705 F.2d 1388, 1390 (4th Cir.1983); *see United States v. Henderson,* 721 F.2d 662, 665 n.1 (9th Cir.1983).

The "basis of knowledge" prong of the *Aguilar-Spinelli* test requires that the affiant set forth the underlying circumstances that led the informant to believe that criminal activity was occurring; a mere conclusory allegation that a suspect was engaging in criminal activity is insufficient. *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589. If the basis of the informant's knowledge is not personal knowledge but hearsay, the hearsay must carry indicia of reliability both as to the veracity of the original source and the basis of the latter's knowledge. *See id.*

*Illinois v. Gates* permits independent police corroboration of some of the details provided by the informant to increase confidence in either the reliability or basis of knowledge of the tipster. *Gates,* 462 U.S. at 233–35, 103 S.Ct. at 2329–31. "[B]ecause an informant is right about some things, he is more probably right about other facts...." *Id.* at 244, 103 S.Ct. at 2335 (quoting *Spinelli,* 393 U.S. at 427, 89 S.Ct. at 594 (White, J., concurring)). *United States v. Roberts,* 747 F.2d at 543. This is not to say that the corroboration of details of innocent conduct invariably will remedy a weakness in an informant's tip. However, "[i]n making a determination of probable cause the relevant inquiry is not

whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates*, 462 U.S. at 243–44 n.13, 103 S.Ct. at 2334–35 n. 13. The magistrate's finding of probable cause is supported by the totality of the circumstances in this case.

▪ The veracity of the informants in this case is supported by the statements in the affidavit that each had previously supplied the police with accurate information about narcotics trafficking. In addition, police knew the identity of the citizen-informants, and the informants had no apparent motive to fabricate their stories. The statements by Bessie Lopez that her husband, her brother, and she, herself, were trafficking in controlled substances carried the indicia of reliability as statements against penal interest. One of the criminal informants further bolstered his credibility by cooperating with the police in the purchase of controlled substances from Simon Lopez. The other criminal informant's statements about selling controlled substances for Simon Lopez were also declarations against penal interest. Bessie and Simon Lopez also made statements against penal interest to these informants.

The most incriminating information in the affidavit is Bessie Lopez's statement in April, 1985, that the appellant, her brother, was currently selling heroin. Bessie also implicated her husband in the trafficking. Moreover, Bessie had admitted on a prior occasion that she herself dealt in controlled substances. The appellant does not argue that the police lacked probable cause to search Bessie and Simon Lopez's residence but instead contends that the affidavit disclosed no reason to believe that the appellant was dealing in heroin or kept narcotics at his new residence. Bessie's incriminating statement, however, is not without independent support in the affidavit. One informant stated that the appellant was selling controlled substances. The citizen-informants had told police that the appellant was distributing heroin from his new residence at 4669 Fuhrer Street.[1]

On April 30, 1985, police surveillance units observed the appellant leaving the Lopez residence, arriving at a shopping center, and making an exchange of items with an unidentified individual. The same conduct was repeated on May 7 and May 9, 1985. On May 9, Bessie Lopez was observed leaving her residence and driving to the appellant's residence at 4669 Fuhrer Street. Although a single act of exchanging packages or objects at a shopping center does not establish probable cause, a pattern of such behavior, viewed in conjunction with Bessie Lopez's admissions and the other details of drug trafficking supplied by the four informants, does give rise to probable cause to believe that the appellant was engaged in a violation of 21 U.S.C. § 841(a)(1). *Cf. United States v. Seybold*, 726 F.2d 502, 504 (9th Cir.1984).[2]

---

1. Although the affidavit did not disclose the basis for the informants' knowledge, it did provide a basis for believing that the information was reliable. One informant had sold controlled substances in the past for Simon Lopez. He or she not only was familiar with such substances but also was privy to Simon Lopez's drug trafficking. The citizen-informants were taken into both Simon and Bessie Lopez's confidence regarding their narcotics trafficking and had been present on several occasions when Simon had counted out sums of money greater than $5000. Thus the affidavit contained information supporting the inference that these three informants had a basis for their knowledge. *See Gates*, 462 U.S. at 233, 103 S.Ct. at 2329 ("If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality,

his failure, in a particular case, to thoroughly set forth the basis of his knowledge ... should not serve as an absolute bar to a finding of probable cause based on his tip.").

2. In *Seybold*, the affidavit indicated that telephone numbers "linked" to the defendant were found in the personal address books of two alleged co-conspirators. The affidavit also described a number of instances in which address books and personal papers seized from defendants contained the telephone numbers of their co-conspirators. Finally, the affidavit indicated that telephone records and police reports further substantiated the "links" to the defendant. *Id.* at 504. "Standing alone, these alleged connections ... might not have justified a search of [the defendant's] residence.... Nevertheless, these connections provided useful information

"[P]robable cause does not demand the certainty we associate with formal trials." *Gates,* 462 U.S. at 246, 103 S.Ct. at 2336.

 Appellant contends that even if the police had probable cause to believe that the appellant was somehow associated with Simon Lopez's drug trafficking, probable cause attached only to the Lopez's residence and not to 4669 Fuhrer Street. We find this argument meritless. Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location. *United States v. Jackson,* 756 F.2d 703, 705 (9th Cir.1985). A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *Id.; United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978). In the case of drug dealers, evidence is likely to be found where the dealers live. *United States v. Valenzuela,* 596 F.2d 824, 829 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). When the traffickers consist of a ringleader and assistants, a fair probability exists that drugs will be present at the assistants' residence as well as the ringleader's. *See United States v. Foster,* 711 F.2d 871, 879 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

 The appellant's argument that probable cause was stale is likewise without merit. The affidavit indicated that appellant was engaged in narcotics trafficking in late April and early May, 1985. The warrant was issued on May 24, 1985 and executed the following day. A search warrant is not stale where "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be

that the magistrate could permissibly have considered, along with the other matters in the affidavit...." *Id.*

**3.** Although the issue was extensively briefed by the parties, we do not consider whether evidence seized during an unlawful search may nonetheless be introduced at trial, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), because we find the warrant valid. The issue of a "good faith" execution of a war-

seized are still on the premises." *United States v. Gann,* 732 F.2d 714, 722 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984). With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect activity. *See Foster,* 711 F.2d at 878; *see also United States v. Landis,* 726 F.2d 540, 542 (9th Cir.), *cert. denied,* 467 U.S. 1230, 104 S.Ct. 2688, 81 L.Ed.2d 882 (1984).

### CONCLUSION

Because the affidavit in support of the warrant established probable cause, the decision of the district court is AFFIRMED.[3]

rant that is unsupported by probable cause should not be addressed by the district court until the district judge has determined that probable cause is lacking. If the court determines that the affidavit is sufficient to support a warrant, good faith reliance is irrelevant. Our court would be in a position to review the *Leon* issue only where the affidavit was deficient and the district court has made findings on the good faith issue.