972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Carlos MADIEDO, Defendant-Appellant.
 No. 91-50255.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided Aug. 17, 1992.
 
 Before FARRIS, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juan Carlos Madiedo entered a conditional guilty plea following a denial by the district court of his motion to suppress. He argues that the search warrant for his residence was issued without probable cause, that he did not voluntarily and knowingly consent to a search of his residence or his business address and that he did not voluntarily and knowingly waive his Miranda rights. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 STATEMENT OF FACTS
 
 3
 Appellant Madiedo's residence was searched pursuant to a Federal search warrant on August 5, 1990. The search warrant was issued upon a showing of probable cause based on an affidavit executed by Anaheim Police Sgt. Stephen Rodig. The affidavit describes a year-long narcotics investigation involving numerous people. Madiedo appears in the affidavit twice. On each occasion he was seen in the company of Roberto Castro, the leader of the conspiracy. Madiedo's residence was not involved in any of the suspicious events cited in the affidavit. The police requested the warrant for the residence because drug offenders typically keep records of their activities in their homes so as to have them under their immediate control. On this basis, the magistrate issued the warrant.
 
 
 4
 The warrant was executed by officers of the Anaheim police department at 8:00 a.m. on August 5, 1990. Three officers approached the door of the residence. One officer had her weapon drawn. Sgt. Rodig knocked on the door. It was answered by a Latin male. Sgt. Rodig asked for Madiedo. When Madiedo appeared, Sgt. Rodig told him that he had a warrant for Madiedo's arrest and a search warrant for the house. Sgt. Rodig asked Madiedo to consent to a search of the house. Madiedo agreed and subsequently signed a consent form.
 
 
 5
 The police then entered and searched the house. Two officers took Madiedo into a back room. After attempting to calm Madiedo down, Officer Klein read him his Miranda rights. Madiedo stated that he understood them. Officer Klein then asked Madiedo if he would be willing to talk to them. Madiedo again agreed. He was then questioned about his involvement with the narcotics conspiracy. In the course of this questioning, Madiedo revealed that he owned a warehouse on Ranger street. Officer Klein asked for permission to search that location. Madiedo agreed and subsequently signed another consent form.
 
 
 6
 At the suppression hearing it came out that there was a bachelor party at the Madiedo residence the night before. Madiedo had apparently been drinking heavily and had been awake the whole night. Witnesses testified that he was still drunk when the police executed the warrant. Madiedo claimed that he did not knowingly and voluntarily consent because of his intoxication. The district court denied the suppression motion finding that Madiedo was intoxicated but not sufficiently intoxicated to invalidate the consent.
 
 
 7
 Following denial of the suppression motion, Madiedo filed a conditional guilty plea. He then appealed the denial of his motion.
 
 DISCUSSION
 I. The Search Warrant Was Valid
 
 8
 We apply the totality of the circumstances test to determine whether the magistrate had a substantial basis for concluding that probable cause existed. United States v. Dozier, 844 F.2d 701, 706 (9th Cir.1988). A magistrate's finding of probable cause is entitled to some deference and will not be reversed unless it is clearly erroneous. Id. Review is limited to information contained in the four corners of the supporting affidavit. See United States v. Stanert, 762 F.2d 775, 778, amended and reh'g denied, 769 F.2d 1410 (9th Cir.1985).
 
 A. Affidavit Was Not Stale
 
 9
 Madiedo notes that the information in the affidavit was approximately one year old. He claims that the information was therefore stale and cannot support a finding of probable cause.
 
 
 10
 The mere lapse of substantial time is not controlling in a question of staleness. United States v. Dozier, 844 F.2d at 707. Staleness must be evaluated in light of the particular facts of the case, the nature of the criminal activity and the property sought. United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991), quoting United States v. Foster, 711 F.2d 871, 878 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984).
 
 
 11
 Here, the police had uncovered a long term ongoing drug smuggling conspiracy. Where the affidavit establishes the existence of a widespread ongoing narcotics operation, staleness arguments lose much of their force. United States v. Hernandez-Escarsega, 886 F.2d 1560 (9th Cir.1989). See also United States v. Landis, 726 F.2d 540, 542 ("the continuous nature of the activity diminishes the significance of the time lag between the acts described in the affidavit and presentation of the affidavit to the magistrate"). Furthermore, the police were seeking to locate records of the drug smuggling. The affidavit contained Sgt. Rodig's expert opinion that drug smugglers generally keep their records and other evidence in their homes so as to have immediate control over them. These sorts of records are the type of records typically maintained over large periods of time. United States v. Hernandez-Escarsega, 886 F.2d at 1566; United States v. Dozier, 844 F.2d at 707. Where the criminal activity is long term and the evidence sought is the kind that is preserved for long periods of time, staleness is not a problem. United States v. Greany, 929 F.2d at 525 (information which was two years old was not stale as it related to an ongoing narcotics operation and the evidence sought was of the type kept for long periods of time). The information in the affidavit was not stale.
 
 
 12
 B. There Was A Sufficient Nexus To The Residence
 
 
 13
 Madiedo claims that the government must establish by direct evidence a nexus between the crime, the place to be searched and the evidence sought. He argues that the affidavit does not contain any evidence linking his residence to the drug operation described therein. He claims that the search is really justified by no more than the fact that he was associated with Roberto Castro. This argument is meritless.
 
 
 14
 Direct evidence that contraband or evidence will be found at a particular location is not required to establish probable cause to search the location. United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986); United States v. Jackson, 756 F.2d 703, 705 (9th Cir.1985). A magistrate is permitted to draw reasonable inferences as to where evidence might be located based on the type of evidence sought and the nature of the criminal activity. Angulo-Lopez, 791 F.2d at 1399; Jackson, 756 F.2d at 705; United States v. Dubrofsky, 581 F.2d 208, 213 (9th Cir.1978). In the case of drug smugglers, the evidence is likely to be located where they live. United States v. Hill, 953 F.2d 452, 459 (9th Cir.1991); United States v. Fannin, 817 F.2d 1379 (9th Cir.1987). When the smugglers consist of a leader and several assistants, a fair probability exists that evidence will be located at the assistants' as well as the leader's residence. Angulo-Lopez, 791 F.2d at 1399; United States v. Foster, 711 F.2d 871, 879 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984).
 
 
 15
 In Hill and Fannin, as here, the search warrant was based on an affidavit of an experienced agent which stated that it is common for drug smugglers to maintain records about their activities in their homes. Therefore, following Hill and Fannin, we find that there was probable cause to support the warrant.
 
 
 16
 Madiedo also raises an issue as to whether the good faith exception would apply. As there was probable cause to support the warrant it is unnecessary to address this issue. Madiedo also claims that his consent to the search of his residence was invalid. As the search of the residence was conducted pursuant to a valid warrant, we need not address this issue.
 
 
 17
 II. The District Court Did Not Err In Concluding That Madiedo Validly Consented To A Search Of His Business Address
 
 
 18
 The question of whether Madiedo validly consented to a search of his business address is relevant as the police did not have a search warrant for that location. Thus, the only justification for the search of that location is Madiedo's consent.
 
 
 19
 The government has the burden of proving that a consent to search was knowing and voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Bumper v. North Carolina, 391 U.S. 543, 548 (1967). In support of his motion to suppress, Madiedo introduced evidence that he was intoxicated at the time that he gave his consent. Madiedo argued that he was so intoxicated that his consent was not knowing or voluntary. Thus, the government had the burden of proving that Madiedo was not so intoxicated that he did not knowingly and voluntarily consent.
 
 
 20
 The government presented uncontradicted evidence that Madiedo orally gave the police consent to search the business address and also signed a consent form. None of the officers noted that Madiedo acted as if he did not understand what was happening. None of the defense witnesses testified that Madiedo was so intoxicated that he did not know what he was doing. The only testimony was that Madiedo was intoxicated. The district court found that the government's testimony was sufficient to meet its burden despite the testimony indicating that Madiedo was intoxicated. In fact, the district court found that Madiedo was intoxicated but was not so intoxicated that he did not knowingly and voluntarily consent to the search. Therefore, the district court did not err in refusing to suppress evidence obtained as a result of the search of Madiedo's business address.
 
 III. Fourth Amendment Claim
 
 21
 Madiedo claims that even if he validly consented, the evidence should be suppressed because the government violated his Fourth Amendment rights in searching without a valid warrant. This argument is meritless. There were two searches. The first search of the residence was made pursuant to a valid warrant. The second search of the business premise was made pursuant to consent. Each was therefore lawful.
 
 IV. Waiver of Miranda Rights
 
 22
 Madiedo claims that he did not knowingly and voluntarily waive his Miranda rights. He argues that his intoxication vitiated his purported waiver. As discussed above, the district court's factual findings on this issue were clear, Madiedo was not so intoxicated that he did not understand what he was doing. Thus, the district court did not err in finding that the waiver was valid.
 
 
 23
 The judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3