USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2301

 UNITED STATES,

 Appellee,

 v.

 YANOKURA FELIZ,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Boudin, Circuit Judge. 
 
 
 
 
 Jeffrey H. Cramer with whom Brown, Rudnick, Freed & Gesmer,
P.C., by Appointment of the Court, was on brief for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, was on brief for
appellee.

July 7, 1999

 
 

 CAMPBELL, Senior Circuit Judge. Appellant Yanokura Feliz 
pleaded guilty in federal district court in Maine to one count of
possession with intent to distribute cocaine, 21 U.S.C. 
841(a)(1), (b)(1)(B). Prior to entering his guilty plea, Feliz
filed a motion to suppress evidence seized from his residence on
the ground that the warrant authorizing the search was not based on
probable cause. The district court ruled that probable cause was
lacking, but that the evidence was nevertheless admissible under
the "good faith exception" recognized in United States v. Leon, 468
U.S. 897 (1984). We agree that the evidence was admissible and
affirm Feliz's conviction.
 I. BACKGROUND 
 On December 3, 1997, a Maine grand jury returned a two-
count indictment charging Feliz with trafficking in cocaine. A 
Maine Superior Court judge subsequently issued an arrest warrant
for Feliz. 
 Thereafter, on December 29, 1997, Agent John L. Dumas, a
Special Agent of the Maine Drug Enforcement Agency who was
investigating Feliz for drug trafficking, submitted an affidavit in
support of a search warrant for Feliz's residence, located at 401
Cumberland Avenue, Apartment # 1006 in the City of Portland, Maine. 
The affidavit sought a warrant to search Feliz's residence for
evidence of drug trafficking including documents, records, and sums
of money. 
 The following facts were alleged in Agent Dumas's
affidavit. On September 22, 1997, Agent Dumas debriefed a 
cooperating individual ("CI") concerning CI's knowledge of drug
trafficking in Southern Maine. CI reported to Agent Dumas that
he/she had purchased cocaine from a Domician male known as "John"
(CI did not believe this to be the man's real name) since the
summer of 1985. CI also reported that he/she initially had to
travel to New Hampshire or Massachusetts to buy cocaine from
"John," but that during the summer of 1997 "John" moved to Portland
and, thereafter, CI continued to purchase cocaine from "John." 
Agent Dumas showed a picture of Feliz to CI, who confirmed that the
man in the photo was the man known to CI as "John."
 CI made two controlled purchases of cocaine from Feliz. 
On September 18, 1997, Feliz sold approximately 8 grams of cocaine
to CI in exchange for $400. The purchase took place on Oak Street
in Portland. Prior to the meeting, CI and Feliz spoke on the phone
and agreed to meet at the Wit's End, a tavern on Congress Street. 
When Feliz arrived at the Wit's End in a green Toyota Forerunner,
he motioned for CI to follow him, then turned left onto Oak Street. 
CI walked to Oak Street and entered the Forerunner. CI handed
Feliz the $400 and Feliz handed CI 8.4 grams of cocaine. CI then
got out of the Forerunner and Feliz drove away. CI gave the
cocaine to a Special Agent of the Maine DEA, who in turn sent it
to the laboratory for analysis. The laboratory analysis confirmed
that the substance was cocaine. 
 On September 24, 1997, CI made a second controlled
purchase of cocaine from Feliz. Again, CI and Feliz arranged by
telephone to meet, this time at Gold's Gym in South Portland, where
Feliz agreed to deliver 7 grams of cocaine in exchange for $400. 
Agent Dumas drove CI to Gold's Gym and watched as CI met with Feliz
and the two exchanged the money for the cocaine. Feliz went into
the gym and CI joined Agent Dumas in his car, where CI turned over
the cocaine. A subsequent laboratory analysis confirmed that the
substance delivered to CI was 7 grams of cocaine. 
 Shortly after this second controlled purchase, Feliz
refused to sell CI any more cocaine. According to CI, Feliz
changed his cellular phone number and pager number. CI told Dumas
that Feliz had stated he (Feliz) was going to invest the profits
from drug sales into a "legitimate" business. According to CI,
Feliz said that he was going to open a cigar store. In December,
1997, Agent Dumas confirmed that Feliz had opened "Fortune Cigars"
in November, 1997. 
 On November 16, 1997, a cooperating defendant ("CD") was
arrested on cocaine trafficking charges. CD told Agent Dumas that
he/she knew a Dominican male from Lawrence who called himself
"John" and lived in Portland on Cumberland Avenue in a "really tall
apartment building." CD also told Agent Dumas that "John" sold
cocaine and had large sums of money. Paragraph III. F. of Agent
Dumas's affidavit further stated: "According to CD#1, FELIZ talked
with CD#1 sometime in the late summer or early fall of 1997, and
discussed the possible sale of 1 kilo of cocaine from CD#1 to
FELIZ."
 Agent Dumas subsequently learned that Feliz lived in an
apartment at 401 Cumberland Avenue, a sixteen-story apartment
building. On December 29, 1997, Agent Dumas spoke with an
assistant manager at the apartment complex, who informed him that
Feliz lived in apartment # 1006. 
 In addition to the information provided by CI and CD,
Agent Dumas's search warrant affidavit contained a paragraph
setting forth in detail his training and experience in the
investigation of drug trafficking crimes. Agent Dumas stated that
he had been a law enforcement officer for approximately four years,
and was sworn as a Special Agent of the Maine DEA in May, 1996.
Agent Dumas further stated that 
 [f]rom my experience, education, training
 and/or study, I know it to be quite common for
 those involved in the illegal
 trafficking/furnishing of scheduled drugs to
 possess, maintain and keep with them, near
 them, and/or in their residences business
 records and journals relating to the
 trafficking and/or furnishing of scheduled
 drugs. . . . 

Agent Dumas continued:

 In particular, I know that, where, as here, an
 individual is demonstrated to be trafficking
 in drugs, it is not uncommon for there to be
 evidence of their drug trafficking activities,
 such as drug records, telephone numbers of
 suppliers and customers, drug trafficking
 paraphernalia, drug proceeds and/or evidence
 of transfer, expenditures or investment of
 drug proceeds kept at the trafficker's
 residence. 

Finally, with regard to sums of money in the possession of drug
traffickers, Agent Dumas stated that in his experience it was
 common for those involved in the illegal
 trafficking/furnishing of scheduled drugs to
 possess and keep with them, near them, and/or
 at their residences, sums of money . . .
 either as a result of scheduled drug sales or
 for the purpose of purchasing scheduled drugs
 or facilitating scheduled drug sales with
 others. Because such moneys are not usually
 safely disposed of legitimately (e.g.,
 deposited in a bank or declared as taxable
 income), it is common for those who traffick
 or furnish illegal scheduled drugs to keep
 these sums on their person or near them, in a
 safe location, frequently in their residences,
 and/or at/near their residences, and/or near
 the same location where they keep their drugs,
 or maintain drug operations.

 On December 29, 1997, a Maine District Court judge issued
a warrant authorizing the search of apartment #1006 at 401
Cumberland Avenue in Portland for documents, records, and sums of
money related to drug trafficking. While executing the search
warrant and an arrest warrant at Feliz's apartment, Agent Dumas,
along with other agents, seized approximately 516 grams of
cocaine.
 On December 30, Agent Dumas swore out a complaint against
Feliz in Maine federal district court. On January 21, 1998, a
federal grand jury returned an indictment charging Feliz with
possession with the intent to distribute cocaine, 21 U.S.C. 
841(a)(1), (b)(1)(B). Feliz moved to suppress the evidence seized
from his apartment on the ground that the warrant was not supported
by probable cause. Feliz argued in particular that the facts set
forth in Agent Dumas's affidavit failed to establish a "nexus"
between the drug trafficking information and his apartment. The
district court ruled that the warrant was not supported by probable
cause, but nevertheless denied Feliz's suppression motion on the
ground that the Leon "good faith exception" applied. See Leon,468
U.S. at 922 (holding that evidence seized in reasonable good-faith
reliance on a search warrant, which is later found defective, may
be admitted at trial). Shortly thereafter, Feliz pleaded guilty,
reserving his right to challenge on appeal the denial of the motion
to suppress.
 II. DISCUSSION 
 A warrant application must demonstrate probable cause to
believe that (1) a crime has been committed the "commission"
element, and (2) enumerated evidence of the offense will be found
at the place to be searched -- the so-called "nexus" element. See
United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). With
regard to the "nexus" element, the task of a magistrate in
determining whether probable cause exists is "to make a practical,
common-sense decision whether, given all the circumstances set
forth in the affidavit before him . . . there is a fair probability
that contraband or evidence of a crime will be found in a
particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). 
In order to establish probable cause, the facts presented to the
magistrate need only "warrant a man of reasonable caution" to
believe that evidence of a crime will be found. Texas v. Brown,
460 U.S. 730, 742 (1983) (plurality opinion). The probable cause
standard "does not demand showing that such a belief be correct or
more likely true than false." Id. 
 As a reviewing court, we too must examine the affidavit
in a practical, commonsense fashion, and we accord "considerable
deference" to a magistrate's determination that information in a
particular affidavit establishes probable cause. Zayas-Diaz, 95
F.3d at 111 (quoting United States v. Taylor, 985 F.2d 3, 6 (1st
Cir.), cert. denied, 508 U.S. 944 (1993)). Our inquiry is whether
the magistrate had a "substantial basis" for concluding that
probable cause existed. Taylor, 985 F.2d at 5. 
 The district court concluded that Agent Dumas's affidavit
did not set forth facts showing a sufficient nexus between the
probable criminal activity described in the search warrant and
Feliz's apartment. The government urges us to reverse the district
court's probable cause ruling and to uphold the warrant without
reliance upon the Leon good faith exception. See Leon, 468 U.S. at
925 (courts have discretion to consider the issue of officers' good
faith without first addressing Fourth Amendment issue). We agree
with the government that in all the circumstances the affidavit
contained sufficient evidence of probable cause to permit the
magistrate to issue a warrant to search Feliz's residence.
 The affidavit included information from two informants
who relayed their first-hand observations of drug trafficking
involving an individual whom they knew as "John." CI identified
a photograph of Feliz shown to him by Agent Dumas as the "John"
from whom he had purchase cocaine on several prior occasions,
beginning as early as 1985. CI also provided details concerning
his conversations with Feliz prior to each of the two controlled
purchases, including the name and address of the places where they
agreed to meet. CI provided further details, later confirmed by
the investigating agents, concerning the color, make, and
registration number of Feliz's car. One of the controlled
purchases was observed directly by Agent Dumas. The affidavit
further stated that after each sale, the drugs were sent to a
laboratory for analysis, which confirmed that a specific amount of
cocaine was present. In sum, the affidavit contained substantial,
detailed information indicating that Feliz had engaged in illegal
drug trafficking for at least twelve years, most recently in the
Portland area.
 Feliz argues that because the drug transactions described
in the affidavit took place approximately three months prior to
issuance of the warrant they were "stale." But courts have upheld
determinations of probable cause in trafficking cases involving
similar or even longer periods. See, e.g., United States v.
Greany, 929 F.2d 523, 525 (9th Cir. 1991) (two year-old information
relating to marijuana operation not stale); Rivera v. United
States, 928 F.2d 592, 602 (2d Cir. 1991) (noting that in drug
trafficking cases, information may be months old). Based upon CI's
two controlled purchases of cocaine in September, and CI's
statement that he had been purchasing drugs from Feliz for
approximately twelve years, the agents could reasonably have
believed that Feliz's drug trafficking was of a continuous and
ongoing nature.
 Feliz's only argument of any strength is that Agent
Dumas's affidavit did not establish a sufficient connection between
the alleged criminal activity and his 401 Cumberland Avenue
apartment. He points out that none of the drug sales occurred at
or near his apartment, and contends that Agent Dumas's experience
in drug trafficking cases and his opinions regarding the habits of
drug traffickers with regard to retention of drug trafficking
records and proceeds are inadequate to supply the required nexus. 
The district court agreed. 
 We disagree with the district court's conclusion that
probable cause to search Feliz's apartment was lacking. The
criterion, as we have noted, is whether the facts presented in the
affidavit would "warrant a man of reasonable caution" to believe
that evidence of crime will be found. Brown, 460 U.S. at 742. 
There is no requirement that the belief be shown to be necessarily
correct or more likely true than false. See Spinelli v. United
States, 393 U.S. 410, 419 (1969) ("only the probability, and not a
prima facie showing" is required). A "practical, commonsense"
assessment, providing a substantial basis for the magistrate's
finding of probable cause, is what is called for. Gates, 462 U.S.
at 238. See also Taylor, 985 F.2d at 5. 
 In addition to Agent Dumas's experience and opinions, to
which the magistrate was entitled to accord some weight, see Brown,
460 U.S. at 742-43, the affidavit presents facts from which a
reasonable inference could be drawn as to the probable presence of
incriminating evidence at Feliz's apartment. CI, whose information
was corroborated by Agent Dumas, identified Feliz as a long-time,
successful, drug trafficker. It could reasonably be supposed that
a regular trafficker like Feliz possessed documents showing the
names and telephone numbers of customers and suppliers as well as
accounts showing the monies paid and collected. It was also
reasonable to suppose that he kept the money he collected and used
in his business in some safe yet accessible place. The affidavit
indicated that Felix resided in apartment #1006 at 401 Cumberland
Avenue, Portland. No other residence or drug-dealing headquarters
of his was identified in the affidavit. It followed that a 
likely place to seek to find incriminating items would be Feliz's
residence. See, e.g., United States v. Angulo-Lopez, 791 F.2d
1394, 1399 (9th Cir. 1986) (stating that "[i]n the case of drug
dealers, evidence is likely to be found where the dealers live"). 
If he did not maintain his accounts and records, and the presumably
large sums of money received in the course of his dealings, at his
apartment, where else would he keep them? 
 In saying this, we do not suggest that, in all criminal
cases, there will automatically be probable cause to search a
suspect's residence. All factors must be weighed in each case in
order to assess the reasonableness of inferring that evidence of
the crime can be found at the suspect's home. We say only that
interpreting a search warrant affidavit in the proper "commonsense
and realistic fashion," United States v. Ventresca, 380 U.S. 102,
108 (1965), may result in the inference of probable cause to
believe that criminal objects are located in a particular place,
such as a suspect's residence, to which they have not been tied by
direct evidence. 
 The nexus between the objects to be seized and the
premises searched need not, and often will not, rest on direct
observation, but rather "can be inferred from the type of crime,
the nature of the items sought, the extent of an opportunity for
concealment and normal inferences as to where a criminal would hide
[evidence of a crime]. . . ." United States v. Charest, 602 F.2d
1015, 1017 (1st Cir. 1979). In the case of drug peddlers like
Feliz, other circuits have upheld searches of the suspect's
residence in circumstances somewhat similar to these. See Angulo-
Lopez, 791 F.2d at 1399 (holding that direct evidence that
contraband or evidence indicating drug trafficking is at a
suspect's residence is not essential to establish probable cause);
United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993)(per
curiam) (observations of drug trafficking occurring away from
suspect's residence can provide probable cause for search of
house); United States v. Williams, 974 F.2d 480, 482 (4th Cir. 1992)
(per curiam) (affidavit establishing that known drug dealer
currently resided in motel room held sufficient to establish
probable cause that drug paraphernalia would be found in room);
United States v. Cruz, 785 F.2d 399, 406 (2d Cir. 1986) (probable
cause for search of drug dealer's apartment even though defendant
was not seen using apartment). We do not find it unreasonable for
the issuing judge in this case to have relied upon her common
sense, buttressed by affiant's opinion as a law enforcement
officer, that Feliz would be likely to keep proceeds from his drug
trafficking and records relating to drug transactions at his
apartment. 
 As in the totality of circumstances here there was a
sufficient showing of probable cause, we see no need to pursue the
issue of good faith under Leon, although we have no doubt the
district court was well justified in applying the Leon criteria in
this case had that been necessary.
 Affirmed.