**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOANNE BLIGHT,
        *Plaintiff-Appellant*,

    v.

CITY OF MANTECA, a municipal
corporation; ARMANDO GARCIA,
Manteca Police Department
Detective; IAN OSBORN, Manteca
Police Department Detective; CHRIS
S. MRAZ, Manteca Police
Department Sergeant; PAUL
CARMONA, Manteca Police
Department Sergeant,
        *Defendants-Appellees*.

No. 17-17334

D.C. No.
2:15-cv-02513-
WBS-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted September 13, 2019
San Francisco, California

Filed December 11, 2019

Before: Ronald M. Gould, Carlos T. Bea, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's summary judgment in favor of the City of Manteca and Manteca Police Department officials in an action challenging the issuance and execution of a search warrant on plaintiff's home and her detention incident to the search as unconstitutional under the Fourth Amendment.

Plaintiff alleged that the search warrant to investigate an illegal marijuana operation was overbroad because there was no probable cause to search her mobile home, which was separate from the suspect's main house and had a separate address. The panel held that based on an informant's reliability and the probability that probative evidence or contraband would be found in the residences on the property, there was probable cause to issue a warrant authorizing a search of the entire property, including the mobile home. Because the search warrant's breadth was co-extensive with the scope of this probable cause, the warrant was not overbroad.

The panel held that the officers acted reasonably when they continued to search plaintiff's mobile home once they discovered that the named suspect did not live in the home. The panel held that the probable cause to search the mobile home did not depend on any suspect living there. Instead, the officers had probable cause to continue the search

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because they could still reasonably believe that the entire property was under the suspect's common control, regardless of whether he was on the property at the time of the search, and regardless of who was found in the mobile home.

The panel rejected plaintiff's contention that the duration of the search was unreasonable under the Fourth Amendment because of her age (74), the lack of evidence linking her to the marijuana operation, and the length of time of the detention. The panel held that given that the officers had a warrant to search the mobile home, they had categorical authority to detain plaintiff, the occupant of the mobile home at the time of the search. The officers also did not detain plaintiff in an unreasonable manner and her detention of no more than one hour was not an unreasonable length of time given the circumstances.

Finally, the panel rejected plaintiff's contention that the search warrant was tainted by judicial deception. The panel held that none of the alleged omissions in the supporting affidavit were material to the issuing judge's probable cause determination.

## COUNSEL

Jeff Dominic Price (argued), Santa Monica, California, for Plaintiff-Appellant.

Lori A. Sebransky (argued) and Kevin P. Allen, Allen Glaessner Hazelwood & Werth LLP, San Francisco, California, for Defendants-Appellees.

**OPINION**

GOULD, Circuit Judge:

Plaintiff-Appellant Joanne Blight challenges the issuance and execution of a search warrant on her home and her detention incident to the search as unconstitutional under the Fourth Amendment. The district court granted summary judgment to Defendants-Appellees City of Manteca and Manteca Police Department officials Armando Garcia, Ian Osborn, Chris S. Mraz, and Paul Carmona. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I**

**A**

In September 2014, Defendants Armando Garcia and Ian Osborn, detectives with the Manteca Police Department, met with a confidential informant[1] who had information on an illegal marijuana operation run by Marlin Lee Ford on his 4.26-acre rural property in Stockton, California. The informant had provided Garcia with truthful and reliable information on other marijuana operations in the past. The informant was not paid for the information, but there was a leniency arrangement related to whether other conduct would be treated as felonies or misdemeanors if the informant provided the Government information helpful to further drug investigations.

The informant provided the detectives with extensive firsthand knowledge of Ford's operation: the informant had known Ford for more than ten years from the informant's

---

[1] The informant's identity remains confidential.

activities in the marijuana industry; the informant had helped Ford grow and process marijuana on Ford's property; the informant knew where to find Ford's property and could describe the property in detail; and the informant said there were guns and large dogs on the property. Detective Garcia checked a private database to which the Manteca Police Department subscribes and motor vehicle records to corroborate that Ford lived at the property the informant had described, which was located at 5858 E. Carpenter Road.

Detectives Garcia and Osborn drove with the informant to the property.[2] The informant identified 5858 E. Carpenter Road as the correct property. Garcia showed the informant Ford's DMV photo, and the informant identified Ford.

From the road, Garcia observed a long driveway leading from the street to the property, a locked gate at the start of the driveway, and a tall fence surrounding the property. The fence extended up to ten feet high with an extension made of *ad hoc* materials, and it enclosed the entire property. Osborn testified that, in his training and experience, the character of the fence and its *ad hoc* extension were suggestive of an illegal marijuana grow.

The detectives could not see the interior of the property because of the fence, but someone in the car opened Google Maps on his or her cell phone and brought up an aerial image of the property. The informant identified the field where the marijuana was being grown and two residences. The informant explained that Ford and his family lived in the main house and Nicolas Serrano, who helped Ford with the

---

[2] Detectives Garcia and Osborn also drove to the property a second time without the informant.

marijuana operation, lived in the mobile home.**[3]**   It is disputed whether the informant told the detectives that Joanne and Dallas Blight, Ford's mother and stepfather, also lived on the property.  But resolving that dispute in the light most favorable to Blight, the informant told Garcia that the Blights lived somewhere on the property.

Detective Garcia filled out an application for a warrant to search Ford's property.  He attached to the application a Google Maps aerial view of the property, which he noted was consistent with the informant's description that there were two modular homes on the property.  The search warrant affidavit stated that the informant had told Garcia that Ford, his wife, and two adult children lived in one of the modular homes, and that Serrano lived in the other one.  In the affidavit, Garcia explained that, in his knowledge, training, and experience, marijuana grown outside will typically be harvested and processed in garages or residences to avoid police detection, and that other types of evidence related to marijuana cultivation and sales also often can be found in residences.  The premises to be searched included the "two modular homes, chicken coops and a small barn and various outbuildings."

A California superior court judge met with Garcia for about thirty minutes, reviewed the warrant application, and issued the warrant.  Detective Garcia also requested and gained approval for SWAT officers to assist the police officers with executing the warrant because of the

---

**[3]** The informant did not provide Serrano's last name, having referred to him only as "Nick."  It is also not apparent that any law enforcement officer learned Serrano's last name before proceeding further with the investigation.

circumstances of the large property, its fence and gate fortification, and the expected presence of dogs and firearms.

## B

At about 7:00am on October 23, 2014, Manteca police and SWAT officers executed the search warrant. SWAT officers drove down the driveway in two armored vehicles and breached the locked gate. Once on the property, SWAT officers made announcements over the PA system for the occupants to exit the residences. Serrano left the main house, followed by his two children; Serrano was promptly placed under arrest.

Serrano's wife was not on the property at the beginning of the search, but she drove up to the driveway soon after the search began. She told Detective Garcia that an elderly woman, Joanne Blight, was inside the mobile home.[4] SWAT officers again made announcements over the PA system, and also at the front door of the mobile home ordering Blight to exit. After there were six minutes with no response, SWAT officers breached the mobile home's front door with a ram. After initially retreating to a back room, Blight exited her home three minutes after the officers breached the front door.

Once Blight was outside, officers told her that if she did not get into the police car she would be handcuffed. Blight got into the police car, and officers drove her to the street for the duration of the search. Blight was never physically searched or handcuffed. The dispatch transcription log recorded the total time of Blight's detention as 20 to

---

[4] Joanne Blight was 74 years old and had hearing problems at the time of the search.

30 minutes; Blight remembers being detained for almost an hour.

The police recovered 23 pounds of marijuana, 8 marijuana plants, 134 pounds of processed marijuana, 251 grams of loose marijuana shake, 78 grams of marijuana buds, measurement scales, currency, and 27 rounds of ammunition from various parts of the property. The police did not recover any evidence or contraband from the mobile home.

It later became known that the Blights had lived in and owned the mobile home since 1997. The mobile home had a dwelling use permit and an assigned address of 5846 E. Carpenter Road, but the land on which the mobile home was sited had the parcel's address of 5858 E. Carpenter Road. Ford owns the property and lived with his immediate family in the main house from 1996 until 2012 but did not live there at the time of the search. Serrano lived in the main house from 2012 through the time of the search to help maintain the property for Ford.

## C

Blight filed a complaint against the City of Manteca and individually named Manteca Police Department detectives and sergeants, asserting Fourth Amendment violations under 42 U.S.C. § 1983 and state law violations. Following discovery, Defendants filed a motion for summary judgment. The district court granted the motion for summary judgment on Blight's claims under § 1983 and declined to exercise supplemental jurisdiction over Blight's

state law claims.  Blight appeals the grant of summary judgment.[5]

## II

We review a district court's grant of summary judgment *de novo*.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009).  We affirm a district court's grant of a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

## III

## A

Blight claims that the search warrant was overbroad because there was no probable cause to search her mobile home.[6]  The superordinate and controlling issue here is thus whether there was probable cause to search the mobile home. We hold that there was.

---

[5] Blight does not appeal the district court's grant of summary judgment rejecting her claim that the officers violated the knock-and-announce rule, nor does she appeal the district court's determination that the city could not be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  She also does not appeal the district court's decision to decline supplemental jurisdiction over her state law claims.

[6] Blight also had argued to the district court that the search warrant was not particular, but she does not raise that issue on appeal.

To be reasonable under the Fourth Amendment, a search warrant must not be overbroad; its breadth must be limited to the scope of the probable cause on which the warrant was based. *In re Grand Jury Subpoenas*, 926 F.2d 847, 856–57 (9th Cir. 1991). To determine whether a warrant was overbroad, we review, with deference, whether the issuing judge had a substantial basis to conclude that the affidavit supporting the search warrant established probable cause. *United States v. Angulo-Lopez*, 791 F.2d 1394, 1396 (9th Cir. 1986). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). A search warrant affidavit will demonstrate probable cause "if, under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003). What is needed is only a fair probability, and not a certainty, that evidence of crime or contraband will be found. *See Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983).

As a starting point, the issuing judge relied heavily on Detective Garcia's description of the statements that the informant made to him. This reliance was entirely reasonable because the issuing judge could reasonably find the informant to be trustworthy under a totality-of-the-circumstances analysis. *See id.* Notably, the informant had given reliable information to law enforcement before, and the information the informant provided in this case included detailed, firsthand knowledge of Ford's drug operation.[7] *See*

---

[7] Although the detectives might have continued to investigate or seek more corroboration than they obtained by reviewing records showing that Ford lived at the property, they did not have to do so because they already had probable cause. *See Ewing v. City of Stockton*, 588 F.3d 1218, 1227 (9th Cir. 2009).

*id.* at 241–42.  The issuing judge could also reasonably rely on Detective Garcia's opinions because of Garcia's extensive experience in narcotics-related investigations and searches.  *See United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984).

When a structure contains two residences or two residences share a lot, there must be probable cause to search each.  *United States v. Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983), *overruled on other grounds by United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc).  But in *United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985), we held that a warrant authorizing the search of an entire ranch was not overbroad, even though there were multiple dwellings on the ranch, because the entire property was under the suspect's control.  We explained that "a warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect."  *Id.*

Here, there was a substantial basis for the issuing judge to believe Ford was in control of the whole premises.  The informant told the detectives Ford owned the entire property and said Serrano lived in the mobile home for the purpose of helping Ford with his drug operation.  Moreover, the entire property was enclosed within one fence and there was a concrete walkway connecting the two homes.

There was also a substantial basis for the issuing judge to believe the entire property was suspect.  The informant told the detectives the marijuana was grown outside and then processed in the buildings on the property. Detective Garcia explained in the search warrant affidavit that, in his experience, when marijuana is grown outside, processed

marijuana and other evidence will usually be found inside the residences and buildings on the property.

The issuing judge was also entitled to "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Angulo-Lopez*, 791 F.2d at 1399. Here, the issuing judge could reasonably infer that evidence of drug dealing would likely be found in both Ford's residence and what was believed to be his assistant Serrano's residence, thus making both the main house and the mobile home suspect. *See id.*

Based on the informant's reliability and the probability that probative evidence or contraband would be found in the residences on the property, there was probable cause to issue a warrant authorizing a search of the entire property, including the mobile home. Because the search warrant's breadth was co-extensive with the scope of this probable cause, the warrant was not overbroad.

## B

Blight next argues that the *execution* of the search warrant was overbroad because the officers should have realized there was no probable cause to search her home once they began the search. Blight claims the officers were put on notice that searching her home was outside the warrant's proper scope when they learned Serrano lived in the main house, the Blights lived in the mobile home, and Ford no longer lived on the property.

Officer authority to search property listed in a search warrant is not unlimited. *Mena v. City of Simi Valley*, 226 F.3d 1031, 1038 (9th Cir. 2000). If officers know or should know there is a risk that they are searching a residence that was erroneously included in a search warrant,

then they must stop the search as soon as they are "put on notice" of that risk. *See Maryland v. Garrison*, 480 U.S. 79, 86–87 (1987).

But here the officers acted reasonably when they continued to search Blight's mobile home because the probable cause to search the mobile home did not depend on Serrano living there. Instead, the officers had probable cause to continue the search because they could still reasonably believe that the entire property was suspect and that the property was still under Ford's common control, regardless of whether he was on the property at the time of the search, and regardless of who was found in the mobile home.[8] *See*

---

[8] Blight's argument is premised on her position that the officers should have realized—after Serrano walked out of the main house, Serrano's wife said that Blight was inside the mobile home, and Ford was not found anywhere on the property—that the mobile home was the Blights' separate residence. But such information did not eliminate the officers' basis for believing that Ford controlled the entire property and that the entire property was suspect. Moreover, to the extent probable cause to search the mobile home was also linked to the officers' belief that Serrano lived there, they were not precluded from making credibility judgments when faced with new information about that issue from Serrano's wife and Blight, each of whom was not disinterested. *See United States v. Ayers*, 924 F.2d 1468, 1479–80 (9th Cir. 1991) (upholding search where officers were told after arriving to execute a warrant that the suspect no longer lived at the residence); *United States v. Ped*, No. 18-50179, 2019 WL 6042813, at *4 (9th Cir. Nov. 15, 2019) (holding that probable cause that parolee lived at a particular residence was not eliminated by statements made by individuals at the residence that the parolee no longer lived there because "[t]hose statements, coming from 'less-than-disinterested source[s], did not undermine the information the officers previously had received'" (quoting *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005) (en banc)) (second alteration in original)).

*United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985).

## C

Blight argues that her detention for the duration of the search was unreasonable under the Fourth Amendment because of her age, the lack of evidence linking her to the marijuana operation, and the length of time of the detention. We hold otherwise.

Officers have categorical authority to detain incident to a search. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). A detention for the duration of a search is generally reasonable when a warrant exists to search the residence and an occupant is inside the residence when the search begins. *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). The detention may be unreasonable if "the detention itself is improper or because it is carried out in an unreasonable manner." *Id.*

The officers had a warrant to search the mobile home. Thus, they had categorical authority to detain Blight, the occupant of the mobile home at the time of the search. The reasons for such a detention are particularly applicable in the context of a narcotics search because there is a heightened risk that an occupant could destroy evidence. And, as explained above, their probable cause to search the mobile home was not eliminated at any point after they began the search, and thus their authority to detain Blight pursuant to that search was never extinguished.

The officers also did not detain Blight in an unreasonable manner. Although she was elderly, her age does not make the detention *per se* unreasonable. *See id.* Old age customarily and traditionally earns a measure of respect

from others, but old age cannot be seen to be a "pass" against government investigation when the government has probable cause to believe that an older person's property may yield evidence of crime and when the manner of detention is reasonable under the circumstances.

Turning to examine how Blight herself was treated, we observe that Blight was never personally searched or interrogated and that she was detained for the duration of the search—no longer than one hour—which is not an unreasonable length of time given the circumstances. For all of these reasons, the detention was reasonable under the Fourth Amendment.

## D

Blight argues next that the search warrant was tainted by judicial deception and identifies five allegedly deliberate or reckless omissions that were material to the issuing judge's probable cause determination. We conclude that none of these alleged omissions amounts to judicial deception.

To make out a claim for judicial deception on summary judgment, the plaintiff must make a substantial showing that the defendant made a deliberate or reckless omission that was material to the finding of probable cause. *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978).

**1**

The affidavit stated that no promises or inducements were made to the informant, but the informant testified that he or she was "promised" a reduction of prior felony convictions to misdemeanors if he or she provided information helpful to further drug investigations. Any potential discrepancy here is immaterial to the probable cause determination because, even if the informant had been promised leniency, there is no reason to think in this case that such a promise created an incentive for the informant to provide inaccurate or unreliable information, and there were sufficient indicia in the search warrant affidavit that the informant was credible.

**2**

The affidavit did not mention that the Blights lived on the property, but the informant had testified that he or she told that to the detectives. Even if the warrant had included that information, the issuing judge would still have had a reasonable basis to find probable cause to search the mobile home, which was on property controlled by Ford and that was being used to grow and process marijuana.

**3**

The affidavit stated that Detective Garcia had located Ford "living" at 5858 E. Carpenter Road through a "law enforcement database," but Blight argues that Garcia had failed to verify whether Ford was an owner, possessor, or renter of the property. DMV records and the database subscribed to by the Manteca Police Department reasonably constitute law enforcement databases and it was not necessary to determine with greater precision Ford's legal

relationship to the property before representing that he lived there.

**4**

The affidavit did not mention that Ford owned a second home in a different city. This omission was immaterial because a second home is not inconsistent with a marijuana operation and additional residence in Stockton. A criminal, like anyone else, can own or control more than one property.

**5**

The affidavit stated that the entire property to be searched was located at 5858 E. Carpenter Road, but the Blights' mobile home, although sited on the 5858 E. Carpenter Road parcel, had its own address of 5846 E. Carpenter Road. Even if the affidavit had included the two addresses, it would not have affected the probable cause determination. The issuing judge knew there were two homes on the property, and a separate address would not have been inconsistent with Serrano also living in the mobile home and the fair probability that evidence of crime or contraband would be found inside.

**IV**

Defendants are entitled to judgment as a matter of law. The issuance and execution of the search warrant did not violate Blight's Fourth Amendment right to be free from

unreasonable search and seizure.**[9]**   We affirm the district court's grant of summary judgment.

**AFFIRMED.**

---

**[9]** In light of our holding that, as a matter of law, Blight's Fourth Amendment rights were not violated, we need not address whether the individual Defendants would be entitled to qualified immunity on the basis that the rights at issue were not clearly established at the time of the incident.