# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 5, 2024          Decided April 30, 2024

No. 22-3069

UNITED STATES OF AMERICA,
APPELLEE

v.

JAMES HUTCHINGS, JR., ALSO KNOWN AS JAMES HUNTER
HUTCHINGS, II,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00361-2)

———

*Paul F. Enzinna*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Chrisellen R. Kolb*, Assistant U.S. Attorney.

Before: PILLARD, WALKER and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: A jury convicted appellant James Hutchings, Jr., of conspiracy to unlawfully traffic and transport firearms. That conviction relied on evidence retrieved from Hutchings's cell phone, which he unsuccessfully moved to suppress before trial. Hutchings now appeals the denial of the suppression motion.

FBI agents found and seized Hutchings's iPhone while arresting suspected firearms and narcotics trafficker Linwood Thorne. At the time, Thorne was alone in an apartment with the iPhone nearby on a pile of his own clothes. After the arrest, an FBI agent applied for—and received—a separate warrant to search the phone, attesting that it was "associated with" Thorne and that it "may reveal evidence pertaining to Thorne's alleged violations of federal narcotics laws." Joint Appendix (J.A.) 188, 200. It wasn't until agents began reviewing a report of the phone's contents that they had reason to think the iPhone was Hutchings's.

Hutchings advances only one argument in support of suppression. He asserts that, when law enforcement officers reviewed the first page of the forensic report detailing his phone's contents and saw a notation that the phone's "owner name" was "James's iPhone," they were required to halt their search. That label, Hutchings contends, put the searching officers on notice that the phone did not belong to Thorne and had therefore been erroneously included in the warrant. Because the probable cause determination in the warrant did not depend on the phone's ownership but on its association with Thorne and its probable evidentiary value regarding Thorne's suspected offenses, we affirm.

## BACKGROUND

In December 2018, federal law enforcement agents searched two addresses associated with suspected drug and

firearms trafficker Linwood Thorne. They found over 40 kilograms of heroin laced with fentanyl, 55 pounds of marijuana, six firearms, and drug-distribution paraphernalia. A grand jury soon indicted Thorne on narcotics trafficking and firearm charges, and a warrant issued for his arrest. Thorne did not self-surrender to law enforcement.

On January 3, 2019, FBI agents traced Thorne to an apartment building on Linden Avenue in Baltimore. As agents surveilled the Linden Avenue location, they observed two men, one of whom they thought resembled Thorne, driving away from the apartment building in a silver Dodge Charger. The agents conducted an investigative stop of the Charger and identified the two people in it as appellant Hutchings and Mark Harrison, Jr. Harrison told law enforcement that Thorne was "the only occupant inside the upstairs apartment, apartment #2," of the Linden Avenue apartment building. J.A. 67. Harrison and Hutchings left, and the agents proceeded to apartment #2, where they encountered Thorne alone and arrested him. In a search incident to Thorne's arrest, agents seized four cell phones: one on Thorne's person, two on and next to a pile of Thorne's clothes, and one in a nearby galley kitchen.

After Thorne's arrest, FBI Special Agent Richard Migliara applied for a further warrant to search the contents of the four phones "associated with" Thorne. In support of his "belie[f] [that] a search of the Target Telephones may reveal evidence pertaining to Thorne's alleged violations of federal narcotics laws," J.A. 200, Migliara averred the following: Thorne had been indicted for large-scale drug- and firearm-trafficking crimes, and, after a warrant was issued for Thorne's arrest, Thorne did not surrender to law enforcement and law enforcement was "unable to locate or apprehend" him. J.A. 197-99. When law enforcement eventually located Thorne,

officers "recovered the Target Telephones from the address along with Thorne's wallet containing his driver's license." J.A. 200. Based on his law enforcement experience, Migliara stated that "narcotics traffickers use cellular telephones to further their illegal activities," and, accordingly, "narcotics traffickers . . . frequently have access to several cellular telephones" and "frequently change cellular telephones[] to avoid detection and attempt to thwart apprehension by law enforcement." J.A. 187. The magistrate judge signed the warrant authorizing the search of the four cell phones for evidence that could, among other things, "establish[] or document[] the commission of the target offenses," "identify[] locations where the individual committed the target offenses," and "document[] meetings and communications between individuals committing one or more of the target offenses." J.A. 181-83.

A digital forensics team spent several months "cracking"—that is, unlocking—the iPhone discovered on top of Thorne's clothing, eventually producing a 36,317-page digital forensic report describing its contents. The first page of that report indicates that the "owner name" of the phone is "James's iPhone." J.A. 649-50. Agents Migliara and Christopher Ray reviewed the report. They determined, based on communications and photographs found in the report, that the phone belonged to Hutchings. The recovered information showed that Hutchings had been serving as the middleman between Georgia firearms dealer Kofi Appiah and Thorne.

Based in part on the contents of the forensic report, a grand jury indicted Hutchings on one count of conspiracy to unlawfully traffic and transport firearms. Before trial, Hutchings moved to suppress all evidence derived from the search of his cell phone. He argued, as relevant here, that the search was unsupported by the warrant because the probable

cause finding "depended upon [the phone's] association with Thorne." J.A. 409. Hutchings asserted that, as soon as the agents learned that the phone belonged to Hutchings, not Thorne, they were required to discontinue their search. After a hearing, the district court denied Hutchings's motion. "The warrant affidavit said only that the phones were 'associated' with Thorne," the district court reasoned, and, "given all of the underlying facts here," that remained true even if the phone belonged to Hutchings: It was "found in [Thorne's] apartment[,] when he was alone [and] with other phones—which were also consistent with the criminal activity with which he was charged." J.A. 612.

After a three-day trial, the jury found Hutchings guilty of conspiracy to traffic and transport firearms, and the district court sentenced him to 60 months in prison followed by three years of supervised release. He now timely appeals the denial of his motion to suppress, arguing that the officers reviewing the report were required to discontinue their search after seeing the notation on its first page that the phone was "James's iPhone."

We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the district court's conclusions of law, and review findings of fact for clear error. *United States v. Miller*, 799 F.3d 1097, 1101 (D.C. Cir. 2015). We will affirm the judgment of the district court if "any reasonable view of the record supports its denial of the motion to suppress." *Id.* (internal quotation marks omitted).

## DISCUSSION

On appeal, Hutchings does not challenge the facial validity of the warrant authorizing search of the contents of his iPhone or argue that it was unsupported by probable cause. He asserts only that the FBI agents executing the warrant violated

6

Hutchings's Fourth Amendment rights by continuing to review the forensic report after they saw, on its first page, that the owner name was "James's iPhone." The "James's iPhone" label, he argues, put the officers on notice that "the iPhone likely was not Thorne's," since Thorne's first name is not "James." Hutchings Br. 12. Hutchings emphasizes that the same officers knew that police had stopped someone named "James" outside the apartment before they executed the arrest warrant, so had reason to know the phone might be his, not Thorne's. Once the officers realized that the phone was not Thorne's, Hutchings contends, the officers were on notice that "the factual basis on which the warrant was authorized" was "inaccurate." Hutchings Br. 11-12.

For support, Hutchings cites *Maryland v. Garrison*, 480 U.S. 79 (1987). The warrant in that case authorized the search of an individual named Lawrence McWebb and the "2036 Park Avenue third floor apartment" occupied by McWebb based on probable cause to believe McWebb kept at the apartment marijuana and related items used for the drug's illegal sale. *Garrison*, 480 U.S. at 80 & n.1. While the officers searched the third floor of 2036 Park Avenue—but only after they found heroin, cash, and drug paraphernalia therein—they realized that the third floor contained two apartments and that they found the contraband in an apartment occupied by Harold Garrison, not Lawrence McWebb. *Id.* at 80. The Court held that the execution of the warrant did not violate Garrison's "constitutional right to be secure in his home" because, when they entered and began searching Garrison's apartment, the officers reasonably "perceived McWebb's apartment and the third-floor premises as one and the same" and, by the time the officers realized that the apartment was Garrison's, they had already discovered contraband. *Id.* at 87-88.

Because the warrant's authorized search area was premised on the swearing officer's mistaken representation that "there was only one apartment on the third floor and that it was occupied by McWebb," *id.* at 81, *Garrison* considered how to account for the mistake: "If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor," the Court explained, "they would have been obligated to limit their search to McWebb's apartment." *Id.* at 86. And, even after they began executing the warrant, the officers "were required to discontinue the search . . . as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant." *Id.* at 87.

Hutchings and the government agree that, under *Garrison*, officers executing a search warrant are required to discontinue a search as soon as they know or should know that there is a risk that they are searching an item or a premises that was "erroneously included within the terms of the warrant." *Id.* Other courts have referenced *Garrison* for the same proposition: "Officer authority to search property listed in a search warrant is not unlimited," the Ninth Circuit explained. *Blight v. City of Manteca*, 944 F.3d 1061, 1067 (9th Cir. 2019). "If officers know or should know there is a risk that they are searching a residence that was erroneously included in a search warrant, then they must stop the search as soon as they are 'put on notice' of that risk." *Id.* (quoting *Garrison*, 480 U.S. at 87). The Seventh and Tenth Circuits have taken the same approach. *See, e.g.*, *United States v. Ramirez*, 112 F.3d 849, 851-52 (7th Cir. 1997); *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009).

The only question, then, is whether the label "James's iPhone" on the first page of the forensic report conflicted with "the basis on which the Magistrate Judge had found probable cause to search the iPhone's contents," and therefore put the officers on notice of a risk that the warrant had mistakenly authorized the search of Hutchings's iPhone. Hutchings Br. 11-12. Because there is no conflict between the basis for the warrant and the forensic report's identification of "James's iPhone," that information did not trigger a duty under *Garrison* to halt the search. The validity of the warrant did not depend on who owned the phones. The warrant affidavit never mentioned the phones' ownership. It averred, simply, that the phones were "recovered" from "the address along with Thorne's wallet containing his driver's license," J.A. 200, were "associated with" Thorne, J.A. 188, and that, given the use of cell phones in narcotics trafficking, the phones "may reveal evidence pertaining to Thorne's alleged violation of federal narcotics laws," J.A. 200.

All of that remained accurate even after the officers discovered that the phone was labeled "James's iPhone." Indeed, that one of the phones might be labeled with a name different from Thorne's is consistent with its being "associated" with Thorne, a leader of a vast drug-and-weapons enterprise who was evading arrest. Unlike in *Garrison*, where the executing officers discovered during their search a material mistake in the facts supporting the warrant—it was not true that their suspect occupied the entire third floor—here, the officers' discovery that the phone was labeled "James's iPhone" did not contradict the facts that supported the warrant application.

That is true even though the officers reviewing the forensic report knew that a man named James was stopped leaving Thorne's apartment shortly before the phone was seized from Thorne. That an iPhone bears the first name of Thorne's recent

visitor does not mean that the phone was not "associated with" or used by Thorne. As the district court sensibly explained, the agents executing the search warrant had no reason to "presume that people who had visited the apartment were going to leave their phones there," since "[m]ost people take their phones with them." J.A. 606. And, even if it had occurred to the officers that the phone may have belonged to Hutchings, it was plausible that Hutchings was lending his phone to Thorne for use as he evaded arrest. Accordingly, the label "James's iPhone" neither suggested that the iPhone was not "associated with" Thorne, nor put a reasonable officer on notice that the warrant may have erroneously included this iPhone.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*